[No. 56063-3. En Banc. December 26, 1991.]

MARGARET D. O'HARTIGAN, *Respondent*, v. THE DEPARTMENT OF PERSONNEL, ET AL, *Appellants*.

---

[29]RCW 2.60.030(3). *See* RAP 16.16(f).

*Kenneth O. Eikenberry, Attorney General,* and *Chip Holcomb, Assistant,* for appellants.

*Molly B. Kenny* and *Paul E. Clay* (of *Karr Tuttle Campbell*), for respondent.

GUY, J. — Respondent applied for employment with the appellants. As a precondition to being considered for a position, she was required to submit to a polygraph examination. She refused and consequently was informed that she would not be considered. She challenges both the polygraph

examination and RCW 49.44.120, which authorizes the exam, as unconstitutional violations of her right to privacy and right to equal protection. The trial court granted her partial summary judgment on both issues. This court accepted direct review and reverses.

## FACTS

In June 1986, respondent Margaret O'Hartigan applied for a job as a word processor with the Washington State Department of Personnel. After a successful interview and achieving an acceptable test score, she was placed on the state registry. She was subsequently notified of an opening with the Washington State Patrol.

During her initial interview with the State Patrol, O'Hartigan was informed that as part of the screening process she would be required to submit to a polygraph examination. Pursuant to an express written policy of the State Patrol, all applicants are required to submit to a polygraph exam or not be considered for employment. The exam is uniformly given in the same location with the same questions routinely asked. The polygraph examiner has no prior knowledge of the applicant. There are four polygraph examiners currently in the unit.

Initially, the examiner reviews a personal history and background questionnaire that the applicant completes prior to the exam. Besides the usual inquiry as to residence, references, marital status, children, past and current employment and education, the questionnaire contains additional questions of a more specific and personal nature. These include prior military service, involvement in any civil or criminal litigation, use of controlled substances, motor vehicle violations including traffic citations and revocation, suspension or denial of an operator's license, financial problems, and a general question requiring disclosure of any information not covered in the questionnaire that would negatively impact on the applicant's performance in the prospective job.

The applicant is then asked to sign a consent form for the administration of the polygraph. Assuming the applicant voluntarily does so, the examiner engages in the pretest phase. This consists of 85 questions covering general background, driving record, employment, military service, arrest information, undetected crimes, medical history, education, personal habits, sex crimes and honesty. The questions call for a "yes" or "no" response. If the answer is "yes", follow-up questions are asked until the response is satisfactorily explained.

The applicant is then hooked up to the polygraph machine and asked 15 questions which seek to verify the applicant's veracity during the pretest phase. After this occurs, the examiner renders his or her opinion as to the credibility of the examinee. The applicant is allowed to explain any deceptive responses and divulge any information he or she may have withheld. If the examiner still doubts the applicant's veracity, a control test is administered. There are no predetermined questions for this phase.

Upon completion, the results are turned over to a State Patrol background investigator who reviews the applicant's file. The file is then hand delivered to the personnel section which reviews it in its entirety, including aptitude test scores, biographical data, credit checks, police checks, reference checks, and the polygraph information. If the polygraph results indicate deception, the personnel department may request another exam. The applicant may also request an additional exam provided there is an adequate reason for doing so.

O'Hartigan was provided with a job description at the initial interview. At this time she did not indicate that she would not submit to a polygraph. If hired, her duties would have included typing investigation reports, ongoing narcotics investigations, employee suspension and termination records, sergeant and lieutenant examinations, internal affairs investigation reports, professional standard reports and criminal investigations.

After the interview, O'Hartigan was given the personal history and background questionnaire. After reviewing the questions, she refused to submit to the polygraph maintaining that the information sought was too personal. Consequently, she was informed that she could not be considered for the word processing position. Despite this, O'Hartigan filled out the questionnaire and returned it to the State Patrol indicating she still wanted the job.

On February 19, 1987, O'Hartigan brought an action against the Washington State Department of Personnel and the State Patrol alleging numerous violations which included her right to privacy, equal protection and due process. The trial court granted her partial summary judgment, holding that the polygraph exam violated both her federal and state constitutional right to privacy. The court also ruled that RCW 49.44.120, which authorized the exam, violated her federal and state constitutional right to equal protection. Subsequently, the Department of Personnel and the State Patrol appealed. This court accepted direct review and now reverses on all issues.

ANALYSIS

I

Privacy Claim

■ O'Hartigan claims the State Patrol's polygraph test requirement, allowed by RCW 49.44.120, violated her state and federal constitutional privacy protections. The polygraph examiner asks questions concerning the job applicant's medical history, psychological history, and whether the applicant has ever committed a sex crime. Such inquiries implicate privacy concerns, and O'Hartigan has a constitutionally protected privacy interest in the personal information requested for the polygraph test. *See Thorne v. El Segundo*, 726 F.2d 459 (9th Cir. 1983), *cert. denied*, 469 U.S. 979 (1984). At issue is whether these privacy rights are violated by the State Patrol's use of polygraph testing for initial applicants.

# A
## Constitutional Standard

■ The Supreme Court has identified two types of interests protected by the right to privacy: the right to autonomous decisionmaking and the right to nondisclosure of intimate personal information, or confidentiality. *Whalen v. Roe*, 429 U.S. 589, 599-600, 51 L. Ed. 2d 64, 97 S. Ct. 869 (1977); *see Bedford v. Sugarman*, 112 Wn.2d 500, 509, 772 P.2d 486 (1989).

The interest in autonomy is recognized as a fundamental right and is thus accorded the utmost constitutional protection. This right involves issues related to marriage, procreation, family relationships, child rearing and education. *Whalen v. Roe*, 429 U.S. at 600 n.26. Government action which infringes on this right is given strict scrutiny and the State must identify a compelling governmental interest for such action to be justified.

■ The interest in confidentiality, or nondisclosure of personal information, has not been recognized by this court as a fundamental right requiring utmost protection. In *Peninsula Counseling Ctr. v. Rahm*, 105 Wn.2d 929, 936-37, 719 P.2d 926 (1986), we held that under both the Washington and federal constitutions, the State had a legitimate interest in disclosure of patient records for the purpose of complying with a federal statutory requirement for the availability of federal funds. In so holding, we followed the rational basis analysis: disclosure of intimate information to governmental agencies is permissible if it is carefully tailored to meet a valid governmental interest, and provided the disclosure is no greater than is reasonably necessary. *Peninsula Counseling*, at 935; *see also Peninsula Counseling*, at 944 (Pearson, J., dissenting) (characterizing majority opinion as following rational basis analysis); *but see Texas State Employees Union v. Department of Mental Health*, 746 S.W.2d 203 (Tex. 1987) (applying heightened scrutiny to state action infringing on confidentiality interest); *Long Beach City Employees Ass'n v. Long Beach*, 41 Cal. 3d 937, 719 P.2d 660, 227 Cal. Rptr. 90 (1986) (same).

We also concluded in *Bedford v. Sugarman*, 112 Wn.2d 500, 512, 772 P.2d 486 (1989) that a state program requiring indigent alcoholics and drug addicts to move into designated shelters in order to receive benefits did not infringe on the privacy rights of that class. In *Bedford*, we analyzed the extent of the privacy interest in nondisclosure of personal information, or confidentiality, and concluded that case law did not support the recognition of a general right to nondisclosure of personal information. *Bedford*, at 509-12. *Bedford*, however, was decided strictly on federal constitutional grounds. *Bedford*, at 508. In this case, O'Hartigan claims protection of her interest in nondisclosure of personal information under both the federal and Washington State constitutions. Consistent with our decisions in *Peninsula Counseling Ctr. v. Rahm, supra,* and *Bedford v. Sugarman, supra,* we apply a rational basis test to O'Hartigan's privacy claim.

O'Hartigan argues that the use of the polygraph is not supported by a compelling state interest. Under our decision in *Peninsula Counseling*, the State's interest need not rise to this standard. Since O'Hartigan's interest in nondisclosure of personal information has not been recognized as a fundamental right, the State need only demonstrate, under a rational basis analysis, a legitimate governmental interest which polygraph testing is utilized to achieve. Specifically, O'Hartigan maintains that the position of a law enforcement word processor may be analogized to word processing positions for secretaries in general and receptionists; and that as none of these positions encompass the public trust or empower employees to deprive citizens of their personal liberty, there is no sufficient state interest that would justify polygraph testing.

O'Hartigan's argument belies the importance of her role. The record discloses that, if hired, she would have been privy to highly confidential and extremely sensitive matters, including investigative reports, ongoing narcotics investigations, employee disciplinary records, sergeant and lieutenant examinations, internal affairs investigation

reports, and professional standards reports. Such information is safeguarded because if it were compromised, this could endanger law enforcement officers or the public safety.

■ ■ The State has demonstrated a legitimate interest in providing its citizens with law enforcement agencies free of corruption and secure in their employees' access to sensitive information. The position for which O'Hartigan applied with the State Patrol would involve regular contact with and access to sensitive documents and information. This circumstance justifies employee screening protection.

Under RCW 49.44.120, polygraph testing is generally prohibited as a method of employee screening. However, the statute also specifically provides that this prohibition does not apply to persons making initial employment applications with a law enforcement agency. RCW 49.44.120. The Legislature, in other words, has accepted polygraph testing as an employee screening method to be used by law enforcement agencies. The other methods of employee screening protection named by O'Hartigan, such as probationary periods and background checks, are, as the State argues, vulnerable to dishonest responses by either an applicant or the applicant's background references and were not deemed adequate by the Legislature. Moreover, a probationary period allows persons access to law enforcement premises, documents, and perhaps investigative information *during* the evaluation period, before a satisfactory assessment can be made. We hold polygraph testing is constitutionally acceptable under an analysis which would require employment screening means which are carefully tailored to achieve the State's interest. Thus, under Washington statute regulating or limiting the use of polygraph testing in the workplace, it is constitutionally acceptable that initial applicants to law enforcement agencies are exempted. *See* RCW 49.44.120.

The use of polygraph testing by the State Patrol does not violate O'Hartigan's constitutional privacy rights. The State has demonstrated a legitimate governmental interest in

providing its citizens with law enforcement employees of high moral character and integrity.

## B
## Scope of Disclosure

We now turn our attention to the questions asked by the State Patrol in conducting polygraph testing of initial applicants. This court has stated:

> While disclosure of intimate information to governmental agencies is permissible if it is carefully tailored to meet a valid governmental interest, the disclosure cannot be greater than is reasonably necessary.

*Peninsula Counseling*, at 935. Thus, the disclosures requested of applicants on the pretest questionnaire must not be greater than needed in order to meet the goal of hiring employees of integrity. Under *Thorne v. El Segundo, supra,* the inquiry must be directly and specifically related to the employment sought. By authorizing the use of the polygraph in this specific setting, we are not authorizing a fishing expedition into the job applicant's personal matters. Nor do we authorize indiscriminate and standardless questioning by the examiner. In this case the questionnaire and the initial questions the polygraph examiner asks are written out, and the examiner simply reads them. The examiner's questions are limited and are directly related to the employment situation sought. We conclude the questions asked of O'Hartigan were no more intrusive than was reasonably necessary to achieve the State's legitimate purpose.

■ According to the stipulated facts, the examiner can follow up the initial questions with other questions if he or she may feel it is necessary. There are no predetermined questions or guidelines for these follow-up questions. If the examiner is not sure of the results of the previous phase of the test, or believes the test subject is lying, he or she may ask whatever additional questions are necessary to allay those doubts. As the Ninth Circuit pointed out in the con-

text of polygraph testing of prospective employees for a law enforcement agency:

> When the state's questions directly intrude on the core of a person's constitutionally protected privacy and associational interests . . . an unbounded, standardless inquiry, even if founded upon a legitimate state interest, cannot withstand the heightened scrutiny with which we must view the state's action.

*Thorne*, 726 F.2d at 470. Limits need to be set in order for the actual administration of a polygraph test to be constitutional. We hold the State must adopt guidelines for this phase of polygraph testing in order to comply with the *Thorne* requirement against standardless, boundless inquiries.

## II
## Equal Protection

O'Hartigan argues that RCW 49.44.120, which authorizes use of the polygraph for law enforcement agencies, violates her right to equal protection. We disagree.

RCW 49.44.120 provides in pertinent part:

> It shall be unlawful for any person, firm, corporation or the state of Washington, its political subdivisions or municipal corporations to require, directly or indirectly, that any employee or prospective employee take or be subjected to any lie detector or similar tests as a condition of employment or continued employment: *Provided,* That this section shall not apply to persons making initial application for employment with any law enforcement agency . . ..

■ Both the fourteenth amendment to the United States Constitution and article 1, section 12 of the Washington State Constitution require equal protection under the law and prohibit unjustifiable statutory classifications. Our constitutional guaranties to equal protection mean that "all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985); *In re Knapp*, 102 Wn.2d 466, 687 P.2d 1145 (1984).

O'Hartigan contends that RCW 49.44.120 violates equal protection by treating initial applicants to law enforcement agencies differently from all other job applicants. Namely, the class of nonlaw enforcement job applicants is protected from preemployment polygraph screening while law enforcement job applicants do not receive this protection.

At the threshold of an equal protection determination, the court must identify the appropriate standard of review. *In re Borders*, 114 Wn.2d 171, 786 P.2d 789 (1990). The rational basis test applies when the challenged classification involves neither a fundamental right nor a suspect classification; a distinction is valid under the rational basis standard if it advances a legitimate state interest. *Borders*, at 176.

The classification in RCW 49.44.120 applies to all initial applicants to law enforcement agencies. It is not based upon race, national origin, or status of citizenship; thus, there is no "suspect" classification. Neither this court nor the United States Supreme Court has recognized the interest in nondisclosure of personal information as a fundamental right, as is the interest in autonomy. We therefore apply a rational basis test to the statute and test whether the challenged classification advances a legitimate governmental interest. Under this minimum scrutiny standard of review, a presumption of constitutionality exists for the statute in question. *Skagit Motel v. Department of Labor & Indus.*, 107 Wn.2d 856, 860, 734 P.2d 478 (1987).

A legislative distinction will withstand a minimum scrutiny analysis if, first, all members of the class are treated alike; second, there is a rational basis for treating differently those within and without the class; and third, the classification is rationally related to the purpose of the legislation. *Ford Motor Co. v. Barrett*, 115 Wn.2d 556, 800 P.2d 367 (1990). In this case, members of the class of initial applicants for positions with law enforcement agencies are treated alike. We therefore proceed to the second question, whether there is a reasonable basis for treating members of

the class differently from those outside the class. In this regard, we have observed that there is a valid reason for treating law enforcement job applicants differently due to the sensitive information accessible to employees (even nonofficers), and the unique potential dangers inherent to compromised intelligence during ongoing criminal investigations and other law enforcement activities. Law enforcement agencies are in an adversarial relationship with the criminal element of society. We have already concluded the State Patrol has a legitimate interest in ensuring a high level of trustworthiness and personal integrity among its employees. Further, we reject the argument that the State Legislature had no rational basis for treating law enforcement agencies more strictly than other state agencies or private employers. Law enforcement personnel perform work of a distinct nature. This court has previously observed that the work of law enforcement is of a highly sensitive nature; that agencies must be free from corruption and employ persons of integrity if they are to function effectively. *See Seattle Police Officers' Guild v. Seattle*, 80 Wn.2d 307, 494 P.2d 485 (1972).

Turning to the third part of the test, we hold that the classification in question is reasonably related to the purpose of the challenged statute. RCW 49.44.120 generally prohibits the use of nonconsensual polygraph testing of employees or prospective employees as a condition of hiring or continued employment. The purpose of this labor regulation statute is to curtail the use of polygraph testing in employment. The Legislature determined, however, that in some employment contexts polygraph testing was justifiable. There are three exceptions to the statute's prohibitions: the statute does not apply to initial applicants to law enforcement agencies, current or prospective employees of the controlled substances industry, and persons "in sensitive positions directly involving national security." RCW 49.44.120. There are legitimate reasons for excluding these groups from the statute. It is evident the Legislature sought to allow added safeguards

against corruption in these certain areas of employment. In curtailing the use of polygraph testing, the Legislature's determination not to effect an absolute ban is still consistent with the purpose of the statute. Therefore, the classification may be said to be related to the purpose of the statute. Furthermore, it is not necessary for the Legislature to include every field of work in which corruption is a special danger in its allowance for polygraph testing, or not allow polygraph testing at all. Rather, the Legislature may select areas of immediately identifiable concern in allowing polygraph testing. "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 110, 93 L. Ed. 533, 69 S. Ct. 463 (1949).

Since the State has a legitimate basis for the classification employed in RCW 49.44.120, and the classification is reasonable and related to the purpose of the legislation, we hold that RCW 49.44.120 withstands an equal protection challenge.

CONCLUSION

The right to nondisclosure of personal matters is a valued right meriting constitutional protection. However, the right is not absolute. Where the State has a legitimate governmental interest, some intrusion upon that right may be justified. We have recognized that the State Patrol has a legitimate interest in ensuring that prospective law enforcement employees are of the highest moral and ethical character possible. We hold this interest is sufficient to justify the polygraph's intrusion upon O'Hartigan's right to privacy, subject to guidelines. We also hold that RCW 49.44.120 does not violate an individual's right to equal protection and thus reverse the trial court. In this case, the State Patrol's interest in polygraph testing in order to prevent corruption and maintain standards of integrity sufficiently outweighs O'Hartigan's privacy interest. Consequently, we hold there is no violation of her rights to

privacy or equal protection and reverse the order of the trial court.

DORE, C.J., and BRACHTENBACH, DOLLIVER, ANDERSEN, and DURHAM, JJ., concur.

UTTER, J. (concurring in part, dissenting in part) — I concur in the decision that RCW 49.44.120, which allows the State Patrol to require its applicants to submit to a polygraph test, does not violate O'Hartigan's constitutional right of privacy.[1] However, I disagree with the majority's analysis. The majority cites *Peninsula Counseling Ctr. v. Rahm*, 105 Wn.2d 929, 719 P.2d 926 (1986) and *Bedford v. Sugarman*, 112 Wn.2d 500, 772 P.2d 486 (1989) as authority to apply the rational basis analysis. Majority opinion, at 118. Because the polygraph test is an inherently intrusive invasion of O'Hartigan's fundamental right of privacy, I would apply the strict scrutiny level of review to this case, which requires the State to show a compelling interest justifying the intrusion and that there are no less intrusive means of meeting that interest.

I

The federal constitution does not guarantee a general right to privacy. *Katz v. United States*, 389 U.S. 347, 350-51, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). However, the United States Supreme Court has recognized that one aspect of the liberty interest protected by the Fourteenth Amendment is a right of personal privacy, or a guaranty of certain areas or zones of privacy. *See Carey v. Population Servs. Int'l*, 431 U.S. 678, 52 L. Ed. 2d 675, 97 S. Ct. 2010 (1977); *Roe v. Wade*, 410 U.S. 113, 152, 35 L. Ed. 2d 147, 93

---

[1] RCW 49.44.120 provides it shall be unlawful for employers to require employees to submit to a polygraph test as a condition of employment or continued employment, but allows an exception for persons making initial applications to: law enforcement agencies, positions involving the manufacturing, etc., of controlled substances, and positions involving national security.

S. Ct. 705 (1973); *Meyer v. Nebraska*, 262 U.S. 390, 399, 67 L. Ed. 1042, 43 S. Ct. 625 (1923).[2]

While the right of privacy "still remains largely undefined", the Supreme Court has recognized that the federal constitution protects two kinds of privacy interests:

> One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.

*Whalen v. Roe*, 429 U.S. 589, 599-600, 51 L. Ed. 2d 64, 97 S. Ct. 869 (1977) (Court found the State's action (placing certain, limited medical information into a centralized computer system) did not "pose a sufficiently grievous threat to [the patient's privacy] interest to establish a constitutional violation." 429 U.S. at 600).[3] In *Peninsula Counseling Ctr. v. Rahm, supra*, we adopted the Supreme Court's holding in *Whalen* and recognized the federal right has been limited to a "core group of privacy rights". 105 Wn.2d at 933.

The list in *Whalen* of types of privacy rights has grown. Professor Ken Gormley of the University of Pittsburgh School of Law has an unpublished monograph as of the time of this opinion, *One Hundred Years of Privacy*, in which he lists the following:

> 1) The right to be let alone, with respect to the acqui[si]tion and dissemination of information concerning the person, particularly through unauthorized publication, photography, or other media. (Warren and Brandeis' original privacy tort).
>
> 2) The right to be let alone, with respect to warrantless governmental searches and seizures which invade a sphere of

---

[2]There are also cases which base the privacy interest on the "penumbra" of rights guaranteed in the first, third, fourth, fifth and ninth amendments to the United States Constitution. *See Griswold v. Connecticut*, 381 U.S. 479, 484-85, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965); *see also Stanley v. Georgia*, 394 U.S. 557, 22 L. Ed. 2d 542, 89 S. Ct. 1243 (1969) (First Amendment); *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968) (Fourth Amendment).

[3]The former interest, in avoiding disclosure of personal matters, has been applied in criminal cases involving violations of Fourth and Fifth Amendment guaranties, but otherwise remains undefined. The latter interest, independence in decisionmaking, usually involves marriage, procreation, contraception, family relationships, child rearing and education. *Roe v. Wade*, 410 U.S. at 152-53. The cases cited above establish that decisions concerning these personal matters involve fundamental rights and are therefore protected by the right of privacy.

individual solitude deemed reasonable by society (4th Amendment privacy).
3) The right to be let alone, where one individual's freedom of speech threatens to disrupt another individual's liberty of thought and repose. (First Amendment privacy).
4) The right to be let alone, with respect to fundamental (often unanticipated) decisions concerning the individual's own person, which are explicitly or implicitly reserved to the citizen by the terms of the social contract (Fundamental-decision privacy).
5) The right to be let alone, as protected by a myriad of express and implied state constitutional guarantees, generally overlapping with categories 1 through 4, above.

Ken Gormley, *One Hundred Years of Privacy* 103-04 (1992) (unpublished manuscript, on file with the Yale Law Journal and author).

Under existing federal law, O'Hartigan has a federally protected constitutional privacy interest in avoiding disclosure of personal matters. A potential employee of the State may not be required to forego her constitutional rights simply to gain the benefits of state employment. *Kelley v. Johnson*, 425 U.S. 238, 245, 47 L. Ed. 2d 708, 96 S. Ct. 1440 (1976). The polygraph test poses a threat to O'Hartigan's constitutionally protected privacy interests:

the most serious threat posed by the use of the instrument is the invasion of the personal liberty of the worker subjected to interrogation. . . . It is the character of the interrogation itself — focusing on past acts and associations, ferreting out attitudes, opinions, and beliefs about sex, politics, and religion — which presents the critical threat to individual integrity by the invasion of personal privacy.

Herrman, *Privacy, The Prospective Employee and Employment Testing: The Need To Restrict Polygraph and Personality Testing*, 47 Wash. L. Rev. 73, 153-54 (1971).

## A

The questions asked in the State's polygraph test concern personal matters, which fall under protected "zones of privacy". Where the state action invades a constitutionally protected zone of privacy, strict scrutiny is applied and the State has the burden of showing a compelling government interest which justifies the invasion of the right, that there

are no less intrusive means of protecting its interest and that the means used have been narrowly tailored to meet that interest. *See Carey v. Population Servs. Int'l, supra; Roe v. Wade, supra; Whalen v. Roe,* 429 U.S. at 606 (Brennan, J., concurring).

Several courts have held the inherently intrusive nature of polygraph tests warrants strict scrutiny, and I agree. In *Long Beach City Employees Ass'n v. Long Beach,* 41 Cal. 3d 937, 719 P.2d 660, 227 Cal. Rptr. 90 (1986), city employees challenged the constitutionality of a statutory scheme allowing the City to administer involuntary polygraph examinations. The California Supreme Court found the standard polygraph test is "far more intrusive than a series of questions related directly to the employee's job performance", and that where they are used as a preemployment screening device, " 'fishing expeditions' and shockingly intrusive questions have been reported." 41 Cal. 3d at 944, 946.

Therefore, the court held the intrusive nature of polygraph tests into private matters requires the State to show a compelling governmental interest. 41 Cal. 3d at 948.[4] The court concluded the City's orders to its employees to submit to polygraph examinations intruded upon their "constitutionally protected zone of individual privacy" under the state constitution and also violated their right to equal protection under the federal constitution. 41 Cal. 3d at 956.

In *Thorne v. El Segundo,* 726 F.2d 459 (9th Cir. 1983), *cert. denied,* 469 U.S. 979 (1984), the court applied heightened scrutiny.[5] Thorne applied for a promotion to become a police officer. As part of the application process, she was required to take a polygraph examination. The examiner asked personal questions concerning Thorne's sexual activity, former relationships, and a miscarriage she had suffered. Thorne was subsequently disqualified from the

---

[4]The court acknowledged the City may require its employees to answer "questions 'specifically, directly, and narrowly relating to [job] performance' ". 41 Cal. 3d at 947.

[5]726 F.2d at 470.

list of applicants. She then filed an action against the City under 42 U.S.C. § 1983 and § 2000e, alleging invasion of constitutionally protected privacy and associational interests and sex discrimination.

The Court of Appeals found Thorne had a constitutionally protected right of privacy and that both types of privacy interests under *Whalen v. Roe, supra,* were implicated by the polygraph examiner's questions. The court then conducted a balancing test, and required the City to show that its inquiry was justified by the legitimate interests of the police department, and that the inquiry was narrowly tailored to meet those legitimate interests. 726 F.2d at 469. The court found the City failed to show the means it had used were narrowly tailored to meet a legitimate interest. There was no showing that "private, off-duty, personal activities of the type protected by the constitutional guarantees of privacy and free association have an impact" on job performance. 726 F.2d at 471. The court concluded Thorne's right of privacy had been violated.

*See also Texas State Employees Union v. Department of Mental Health,* 746 S.W.2d 203 (Tex. 1987) (Department's polygraph policies violate privacy interests protected under state constitution); *Hawaii Psychiatric Soc'y Dist. Branch v. Ariyoshi,* 481 F. Supp. 1028 (D. Hawaii 1979) (privacy interest in nondisclosure extends to individual's liberty to make decisions regarding psychiatric care and State must show a compelling interest which outweighs the privacy interest).

The privacy issue is decided based on the type of information sought and not the means by which it is obtained. In this case, the questions asked of O'Hartigan concerned private matters which are constitutionally protected. See Clerk's Papers, at 100 (question number 31 implicates freedom of association); 102-04 (questions concerning medical and psychological history); 105 (personal habits regarding alcohol, gambling and drugs); 106 (while the category is labeled "sex crimes", the questions do not ask about specific criminal activity, rather they are vague and may include

legitimate, personal sexual relations). The right of privacy protects the type of information sought from O'Hartigan. The next step in the analysis is to discuss whether there is a compelling state interest that justifies the intrusion into her right of privacy.

## B

The State Patrol's interest is of a compelling nature in hiring employees of high moral and ethical character. The majority balances those interests and properly finds the State's interests outweigh those of O'Hartigan. The State has a compelling interest in setting and maintaining standards for law enforcement personnel and in protecting highly sensitive information. This interest outweighs O'Hartigan's interest in not revealing personal information. Therefore, any method by which the State obtains information is equally invasive of her right to privacy. We must decide whether the method chosen by the State (here, the polygraph) was narrowly tailored to meet the State's interest.

Under a least restrictive means analysis, the question is whether the State can achieve its goal of hiring moral and ethical employees in a way that is less intrusive of O'Hartigan's right of privacy. The intrusion occurs when she is required to reveal specific *types* of information. The basic question then is whether the State can achieve its goal without having access to the type of information sought. Where the State, as the majority suggests, specifically limits the polygraph questions to those which are directly and specifically related to the employment sought, then the polygraph test may be the least restrictive means. See majority opinion, at 120.

However, the majority erroneously places the burden on O'Hartigan to show there are no less restrictive means and that the test questions were narrowly tailored to meet the State's interest. Once you hold the State must use the least restrictive means, then the burden is on the State to prove it used the least restrictive means. *See Peninsula Counsel-*

*ing Ctr. v. Rahm*, 105 Wn.2d 929, 944-45, 719 P.2d 926 (1986) (Pearson, J., dissenting). I disagree with the majority that the questions asked of O'Hartigan were "no more intrusive than was reasonably necessary". Majority opinion, at 120.

Questions concerning medical history and criminal history are not directly job related and fail to meet the least restrictive means analysis. If such information is necessary, the State has other means of obtaining this information. It has access to all criminal records and it can obtain O'Hartigan's medical history by asking her to submit her medical records. Questions concerning sexual activity are entirely invasive of an individual's privacy interests and fail to meet the compelling interest standard. *Thorne v. El Segundo*, 726 F.2d 459 (9th Cir. 1983), *cert. denied*, 469 U.S. 979 (1984). Furthermore, the stipulated facts in this case state the polygraph examiner can follow up any of the form questions with other questions until he or she is satisfied with the answers. And, if the examiner believes the examinee is lying, the examiner can ask any other questions he or she desires. Therefore, I agree with the majority that the State must establish guidelines regarding the scope of questions asked during a polygraph test.

For these reasons, I would remand the matter to the trial court to determine whether all the questions asked are narrowly tailored to meet the State's compelling interest and whether they are directly and specifically related to employment.

## II

This type of information is also protected under article 1, section 7 of the state constitution. As to these matters, the right of privacy encompasses a specific constitutional right to be let alone:

> No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

Const. art. 1, § 7. We recognize that under some circumstances, article 1, section 7 affords greater protection of

privacy than does the federal constitution. *Bedford v. Sugarman*, 112 Wn.2d 500, 507-08, 772 P.2d 486 (1989).[6] Because the information sought in this case is clearly protected by both constitutions, it is unnecessary for us to decide the limits of the state constitutional right in this area.

There are, however, numerous state cases that have examined issues of privacy not yet determined by the United States Supreme Court. *Rasmussen v. Fleming*, 154 Ariz. 207, 741 P.2d 674 (1987); *Horsemen's Benevolent & Protective Ass'n, Inc. v. State Racing Comm'n*, 403 Mass. 692, 532 N.E.2d 644 (1989); *Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123 (Alaska 1989); *Jennings v. Minco Technology Labs, Inc.*, 765 S.W.2d 497 (Tex. Ct. App. 1989); *Barasch v. Pennsylvania Pub. Util. Comm'n*, 133 Pa. Commw. 285, 576 A.2d 79 (1990); *State v. Mooney*, 218 Conn. 85, 588 A.2d 145 (1991).

## III

The challenged classification involves a recognized fundamental right of privacy. Therefore, I would also apply the strict scrutiny analysis to O'Hartigan's equal protection argument. The statute implicates discrimination between applicants to all other jobs and applicants to law enforcement (as well as to positions involving controlled substances and national security). For the reasons stated above, the State has shown a compelling interest which outweighs O'Hartigan's privacy interests and justifies the classification. However, it has failed to establish that the polygraph questions were narrowly tailored to meet that interest. I would remand this issue as well.

SMITH, J., and CALLOW, J. Pro Tem., concur with UTTER, J.

---

[6]*Bedford* was decided under federal law and is limited to facts of the case. 112 Wn.2d at 517 (Utter, J., concurring).