Mr. Larry Norris, Interim Director Arkansas Department of Correction P.O. Box 8707 Pine Bluff, Arkansas 71611
Dear Mr. Norris:
This is in response to your request for an opinion on four issues relating to the Arkansas Department of Correction's proposed use of pre-employment polygraph examinations as a device to screen potential employees for the Boot Camp Program. You indicate in your request that a grand jury in Pulaski County recently recommended in their findings that the Department of Correction should pre-screen employees of the Boot Camp Program for gang involvement or criminal activity. You also indicate that, at a Board of Correction meeting in May, it was recommended that individuals being considered for hire at the Boot Camp Unit be required to take polygraph examinations. Your request pertains to the following four issues that have arisen in the Department of Correction's attempt to implement this procedure:
 1. Can the Department of Correction use the polygraph as a tool in denying an individual employment at the Boot Camp Unit?
 2. Can the Department of Correction use the polygraph as a means to pre-screen individuals for hire for the Boot Camp Unit only and not for other units of the Department?
 3. Is the Department of Correction required to provide the individual with the results of a polygraph test?
 4. If the Department of Correction does not require the polygraph for hiring other employees in the Department, and if the Department uses it for hiring Boot Camp employees and an individual is not hired at the Boot Camp because of the polygraph, can the individual also be denied employment elsewhere in the Department of Correction?
In response to your first question, it is my opinion that the Department of Correction can legally use a polygraph examination as a pre-employment screening device for applicants at the Boot Camp Unit as long as the Department administers these examinations in such a manner that does not violate any constitutional provisions or employment discrimination laws. Accordingly, it is my opinion that the Department can deny employment to an applicant for the Boot Camp Unit based on the results of a polygraph examination.
The foregoing opinion is based on the fact that there is no Arkansas statute which precludes either private or public employers from utilizing the polygraph examination as a pre-employment screening device; the opinion is also based on the case law on the subject from other jurisdictions which will be discussed herein. The fact that Arkansas has no statutes which address polygraph examinations in the employment context is in contrast to the approach of many states which have enacted legislation specifically prohibiting the use of polygraph tests as a means to screen potential employees.[1] Subsequent to a number of states enacting legislation curtailing the use of polygraphs in the employment context, the United States Congress in 1988 passed the Employee Polygraph Protection Act (EPPA); this act forbids most private employers from using polygraph and other types of lie detector tests as a pre-employment screening device and strictly regulates intrusions on worker privacy by the use of polygraph tests on current employees. 29 U.S.C. §§ 2001-2009. The Employee Polygraph Protection Act, however, specifically exempts federal, state, and local government employers from its coverage.See 29 U.S.C. § 2006(a). Accordingly, the EPPA would not prevent the proposed use of polygraph examinations by the Department of Correction.
Despite the fact that there is no Arkansas statute or federal statute which would prohibit the use of polygraph tests as proposed by the Arkansas Department of Correction, the Department still would be required to administer the tests in a manner consistent with the requirements of the Constitution and any applicable employment discrimination laws; for example, such examinations would have to be applied equally to all applicants. A state may not constitutionally impose arbitrary or discriminatory employment criteria and may not condition public employment on the willingness of an employee or potential employee to forego the exercise of his constitutional rights.Norton v. Blaylock, 285 F.Supp. 659 (W.D. Ark. 1968), aff'd409 F.2d 772 (8th Cir. 1969). However, it has been stated that the opportunity to be a public employee is not, as such, a protected legal or constitutional right. Payne v. Ballard,595 F.Supp. 878 (E.D. Ark. 1984), aff'd 761 F.2d 491 (8th Cir. 1985).
The constitutional provisions most likely to be involved in any challenge to the use of polygraph tests as a pre-employment screening device are the right to privacy and the equal protection clause of the Fourteenth Amendment to the United States Constitution. However, government employees who have challenged mandatory polygraph tests as a condition of employment on constitutional grounds have had limited success. A discussion of some of the recent cases on these issues will be discussed herein.
The United States Supreme Court has identified two types of interests protected by the right to privacy: the right to autonomous decision making and the right to nondisclosure of intimate personal information, or confidentiality. Whalen v.Roe, 429 U.S. 589, 599-600 (1977). The interest in autonomy is recognized as a fundamental right, and the test of strict scrutiny is utilized when infringements on the right occur. However, the confidentiality strand of the right to privacy, the one possibly at issue in the Department of Correction's proposed use of polygraph examinations, has not been accorded such protection by the courts.
One court has recently held that a state need only have a rational basis for requiring job applicants for employment in law enforcement agencies to undergo polygraph examinations entailing disclosure of personal information, rather than a compelling interest, because the right to nondisclosure of such information is not a fundamental right under the United States Constitution; the rational basis test is satisfied when the disclosure requirement is carefully tailored to meet a legitimate governmental interest and the scope of the disclosure is no greater than is reasonably necessary to achieve that interest.See O'Hartigan v. State Dept. of Personnel, 118 Wash. 2d 111,821 P.2d 44 (1991). The Court in O'Hartigan stated, however, that even under the rational basis test an employer must limit the pre-employment polygraph exam questions to matters directly related to the employment situation sought. 821 P.2d at 49.
Another case addressing the issue of privacy in the context of pre-employment polygraph examinations is Woodland v. City ofHouston, 940 F.2d 134 (5th Cir. 1991). In that case, a class action suit was brought challenging the City of Houston's pre-employment polygraph testing of applicants for the city's police and fire departments. The Fifth Circuit held that the utilization of such tests did not violate the applicants' privacy interests.
There are, however, two cases which have applied heightened scrutiny to state action in cases involving a challenge to the use of polygraph exams in the public employment context; under the strict scrutiny test, these courts found a violation of employees' privacy rights. See Texas State Employees Union v.Texas Dep't of Mental Health and Mental Retardation,746 S.W.2d 203 (Tex. 1987); Long Beach City Employees Ass'n v. Long Beach,41 Cal. 3d 937, 227 Cal. Rptr. 90, 719 P.2d 660 (1986). These cases can be distinguished from the cases mentioned previously in that they do not involve law enforcement personnel; accordingly, it can be argued that there is a stronger public policy argument for the use of polygraph exams when those being tested are applicants for law enforcement positions rather than for other public employment positions.
It appears, therefore, that there are no Arkansas or federal polygraph laws which would prohibit the Arkansas Department of Correction from implementing a policy whereby pre-employment polygraph tests will be used as a means to screen applicants to the Boot Camp Unit for criminal or gang activity. However, the Department should be aware that an applicant to the Boot Camp Unit might challenge the practice on constitutional grounds, as discussed herein. As stated in the O'Hartigan case, the questions asked during a polygraph examination must be limited and directly related to the employment situation sought to pass even the rational basis test under a privacy challenge. It would be advisable, therefore, for the Department of Correction to keep this is mind as it forms the questions to be asked in its pre-employment polygraph exams. In addition, the Department should be cognizant of the fact that conducting polygraph examinations is a very subjective process and should form its questions with that thought in mind; defining what a "gang" is may involve a very subjective process which might open the Department to constitutional or employment discrimination challenges.
In addition to complying with constitutional provisions in administering its pre-employment polygraph examinations, the Department of Correction must comply with all other applicable employment discrimination laws as well. The main federal statute prohibiting job discrimination is Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000(e) et seq. Title VII forbids employment discrimination against applicants and employees on the basis of race or color, religion, sex, pregnancy, and national origin by employers, including state governments and their political subdivisions and agencies. Disparate impact discrimination is one type of prohibited practice under Title VII. Disparate impact discrimination arises when employment policies, neutral on their face and regardless of intent, weigh more heavily on one group than on another. See Griggs v. DukePower Co., 401 U.S. 424 (1971).
If a prima facie case were made in a Title VII disparate impact challenge against the Department of Correction's practice of pre-employment polygraph testing, the Department would have the burden of persuasion at trial of showing as a defense a "business necessity" for the practice. While United States Circuit Courts of Appeals are in conflict on what constitutes a "business necessity" for purposes of Title VII, the Eighth Circuit has defined the term as requiring an employer to show a "compelling need" for the challenged employment practice. See EEOC v. RathPacking Co., 787 F.2d 318 (8th Cir.), cert. denied,107 S.Ct. 307 (1986).
In response to your second question, it is my opinion that the Department of Correction may administer pre-employment polygraph examinations to applicants for the Boot Camp Unit, while declining to administer such tests to applicants for other areas in the Department of Correction. The issue presented by such a differing policy is whether there is a violation of the equal protection clause of the Fourteenth Amendment. The courts which have dealt with equal protection challenges to pre-employment polygraph examinations have utilized a rational basis standard, and as a result, have generally upheld such practices.
One such case is Anderson v. City of Philadelphia,845 F.2d 1216 (3d Cir. 1988). In that case, the plaintiffs were applicants who were denied positions with the Philadelphia Police and Correction Departments because they failed to pass pre-employment polygraph examinations. One of the applicant's challenges to the polygraph examinations was based on the equal protection clause due to the fact that a Pennsylvania law forbade the use of such pre-employment tests by all private and public employers, with the exception of public law enforcement agencies. The Third Circuit in that case applied the rational basis standard to the equal protection challenge and held that the City's asserted justification for the tests, that of attaining a better-qualified group of law enforcement personnel, was enough to meet the standard; accordingly, the City prevailed in the case. The rational basis standard was applied in Anderson because there is no fundamental right to government employment for purposes of the equal protection clause. See also United Bldg. Constr.Trades Council of Camden v. Mayor of Camden, 465 U.S. 208, 219
(1984).
The factual circumstances in Anderson are different from those in which the Department of Correction proposes to use the polygraph exam in that polygraph examinations were to be administered to all law enforcement personnel in Anderson but not to other private or public employees, while the Arkansas Department of Correction proposes to use the tests for applicants to only one unit of their department. It is my belief, however, that a rational basis test would still be applied to the Arkansas Department of Correction's polygraph examination program if it were challenged on equal protection grounds because, as previously stated, there are no fundamental rights involved. Additionally, it is my opinion that the proposed Department of Correction polygraph policy could withstand an equal protection challenge and would be found to be supported by a "rational basis."
In response to your third question, it is my opinion that the answer is "yes." If the Department of Correction implements a pre-employment polygraph examination procedure, it will, pursuant to A.C.A. § 17-32-201(a) (Repl. 1992), be required to have a licensed polygraph examiner administer the examinations. The provision codified at A.C.A. § 17-32-201(a) states that it shall be unlawful for any person, including a state employee, to administer polygraph examinations without a polygraph examiner's license. Additionally, pursuant to A.C.A. § 17-32-211(12) (Repl. 1992), a licensed polygraph examiner is required, if so requested, to inform the polygraph subject of the results of the examination. Failure of a licensed polygraph examiner to comply with this requirement could result in the suspension or revocation of his license.
In response to your fourth question, it is my opinion that the answer is "yes." If an individual is denied employment at the Boot Camp Unit based on admissions or deceptive answers made during a polygraph test administered by the Department of Correction, the results of the polygraph examination may, in my opinion, be taken into account if the individual applies for employment in other units of the Department. This opinion is based, in part, on the fact that one who applies to the Boot Camp Unit voluntarily agrees to take a polygraph exam and any findings made during such an exam are the results of his or her voluntary participation, as well. Any such voluntarily given information should, as a practical matter, be allowed for consideration and used as a basis for denial of employment by all units of the Department of Correction. If the information derived from the polygraph examination is considered reliable by the Department for one job, then there is no reason to deem it unreliable for another. It is likely that a court would treat such information as it would other derogatory information, not contained on an employment application, which is discovered by an employer, and permit it to be considered in reaching an employment decision.
Additionally, in order to prevent any potential problems that might arise under such a policy, it might be advisable for the Department of Correction to tell applicants to the Boot Camp Unit that the results of their polygraph examinations may be used to deny them employment should they apply to any other units of the Department.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] For examples of legislation enacted to prevent the use of polygraph examinations as a condition to employment, see Iowa Code Ann. § 730.4(2) Minn. Stat. § 181.75 (1990). See also
Johnson, Banning the Truth-Finder in Employment: The EmployeePolygraph Protection Act of 1988, 54 Mo. L. Rev. 155 (Winter 1989).