# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| PACIFIC NORTHWEST CHILD CARE ASSOCIATION, | No.  52673-5-II |
| Appellants, | |
| v. | |
| ATTORNEY GENERAL'S OFFICE, a state agency, JAY INSLEE, Governor of the State of Washington, and WASHINGTON DEPARTMENT OF EARLY LEARNING, a state agency, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, C.J. — The Public Employment Relations Commission (PERC) dismissed an unfair labor practice complaint that Pacific Northwest Child Care Association (the Association) filed against the Department of Early Learning (the Department).  The Association appeals the superior court's order denying and dismissing its petition for judicial review of PERC's decision.  The Association's complaint arose from the Department's denial of the Association's public records request for the names and contact information of family child care providers (providers).  The Association argues that compliance with a Public Records Act (PRA) exemption should be considered an unfair labor practice because it interferes with the Association's right to organize.  And the Association argues that the PRA exemption violates the First and Fourteenth Amendments.

Because the actions alleged by the Association do not amount to an unfair labor practice, PERC did not misapply the law by dismissing the Association's complaint. Furthermore, the PRA exemption at issue does not violate the First Amendment or the Fourteenth Amendment. Therefore, we affirm.

FACTS

On January 24, 2017, Deborah Thurber, as a representative of the Association, submitted a public records request to the Department. The public records request sought the "names, mailing address, telephone number and email address provided for state contact of all family child care providers." Administrative Record (AR) at 64. The stated reason for seeking the information was to communicate with "child care providers about their constitutional and statutory rights to decertify our current exclusive bargaining representative and replace it with another exclusive bargaining representative of our choosing." AR at 64. The Department informed Thurber that Initiative 1501 (I-1501), codified as RCW 42.56.640,[1] was passed by voters in November 2016, and exempted the records Thurber requested.

---

[1] RCW 42.56.640 provides,

>        (1) Sensitive personal information of vulnerable individuals and sensitive personal information of in-home caregivers for vulnerable populations is exempt from inspection and copying under this chapter.
>        (2) The following definitions apply to this section:
>            (a) "In-home caregivers for vulnerable populations" means: (i) Individual providers as defined in RCW 74.39A.240, (ii) home care aides as defined in RCW 18.88B.010, and (iii) family child care providers as defined in RCW 41.56.030.
>            (b) "Sensitive personal information" means names, addresses, GPS [global positioning system] coordinates, telephone numbers, email addresses,

Thurber then submitted the same records request as a representative of the Association to the Department in August 2017. The Department denied Thurber's second records request.

The Association filed an unfair labor practices complaint against the Department. The amended complaint alleged that:

> By refusing to provide the Pacific Northwest Family Child Care Association (PNWCCA) with a list of family child care providers, the State of Washington has impeded the right of family child care providers to select bargaining representatives of their own choosing, thus committing an unfair labor practice.

AR at 39. In its statement of facts, the Association stated that it filed a representation petition with PERC, accompanied by 892 showing of interest cards from family child care providers. There are approximately 7,000 provider members in the bargaining unit. The 892 showing of interest cards from provider members did not meet the 30 percent showing of interest requirement for a representation election under RCW 41.56.070.[2] Because the Association failed to meet the required 30 percent showing of interest, PERC dismissed the Association's representation petition.

The Association alleged that "[w]ithout an accurate list of providers and their contact information, it is logistically impossible for family child care providers to communicate with each other and gather enough signatures to meet the 30 percent showing of interest threshold necessary to require PERC to conduct a representation election." AR at 43-44. The Association also asserted

---

social security numbers, driver's license numbers, or other personally identifying information.

    (c) "Vulnerable individual" has the meaning set forth in RCW 9.35.005.

[2] RCW 41.56.070 requires PERC to certify a representation election only when a prospective bargaining representative shows "written proof of at least thirty percent representation of the public employees within the unit." 30 percent of 7,000 is 2,100.

that because the approximately 7,000 providers make up only 0.001 percent of Washington's population, "[a]n attempt to gather signatures through a public education campaign employing traditional advertising methods would be prohibitively expensive and, no matter how comprehensive, would likely still miss many providers." AR at 44. Based on this assertion, the Association contended that the "only feasible method to gather signatures for a showing of interest is to obtain a list of providers from the state and communicate with them directly." AR at 44.

The Association explained that the initial attempt to make a sufficient showing of interest was based on an out-of-date provider list obtained from a public records request made prior to the passage of I-1501 and RCW 42.56.640. The Association claimed that it screened that list and removed an unknown number of bad addresses. The Association further claimed that hundreds of mailings were returned undeliverable, hundreds of providers no longer lived at the listed address, and other individuals were no longer members of the bargaining unit. The Association did not include exact numbers for any of these categories of mailings. The Association also did not identify how many mailings potentially reached providers but were not returned because the provider had no interest in a representation change. Based on these assertions, the Association alleged, "The state's refusal to release an accurate and up-to-date list of family child care providers to [the Association] effectively prevented it from gathering a 30 percent showing of interest and interfered with providers' ability to designate bargaining representatives of their own choosing." AR at 45. The Association also alleged that RCW 42.56.640 did not prevent the disclosure of a provider list to a government agency or during a judicial or quasi-judicial proceeding "such as a PERC-administered representation or unfair labor practice proceeding." AR at 45.

No. 52673-5-II

The Acting Unfair Labor Practice Manager dismissed the Association's initial complaint for failing to state a cause of action for employer interference. The Association appealed to PERC. PERC concluded:

> The [Association] asks the Commission to issue a cause of action for employer interference when the employer complied with RCW 42.56.640, which exempts certain sensitive information, including the names and contact information of in-home caregivers, from disclosure. A cause of action cannot be found for employer interference because the employer was complying with another law.

AR at 4 (footnote omitted). PERC also concluded that the exception noted by the Association in its amended complaint, RCW 42.56.645,[3] did not apply because there was no pending

---

[3] RCW 42.56.645 provides,

[(1)] Nothing in chapter 4, Laws of 2017 shall prevent the release of public information in the following circumstances:
(a) The information is released to a governmental body, including the state's area agencies on aging, and the recipient agrees to protect the confidentiality of the information;
(b) The information concerns individuals who have been accused of or disciplined for abuse, neglect, exploitation, abandonment, or other acts involving the victimization of individuals or other professional misconduct;
(c) The information is being released as part of a judicial or quasi-judicial proceeding and subject to a court's order protecting the confidentiality of the information and allowing it to be used solely in that proceeding;
(d) The information is being provided to a representative certified or recognized under RCW 41.56.080, or as necessary for the provision of fringe benefits to public employees, and the recipient agrees to protect the confidentiality of the information;
(e) The disclosure is required by federal law;
(f) The disclosure is required by a contract between the state and a third party, and the recipient agrees to protect the confidentiality of the information;
(g) The information is released to a person or entity under contract with the state to manage, administer, or provide services to vulnerable residents, or under contract with the state to engage in research or analysis about state services for vulnerable residents, and the recipient agrees to protect the confidentiality of the information; or

5

representation election or other PERC action at the time Thurber filed her request on behalf of the

Association. Accordingly, PERC affirmed and adopted the dismissal of the Association's unfair

labor practice claim for failure to state a cause of action.

The Association filed a petition for judicial review of PERC's decision in superior court.

The superior court agreed with PERC's decision and declined to reach the constitutional issues

raised by the Association. The superior court denied and dismissed the Association's petition for

review.

The Association appeals.

ANALYSIS

A.    STANDARD OF REVIEW

We review a PERC decision in an unfair labor practice complaint under the Washington

Administrative Procedure Act (APA), chapter 34.05 RCW. *Kitsap County Juvenile Detention

Officers' Guild v. Kitsap County*, 1 Wn. App. 2d 143, 154, 404 P.3d 547 (2017). We review

PERC's decision, not the underlying officer's decision or the superior court's decision. *Id*. We

---

(h) Information about specific public employee(s) is released to a bona fide news organization that requests such information to conduct an investigation into, or report upon, the actions of such specific public employee(s).

(2) Nothing in chapter 4, Laws of 2017 shall prevent an agency from providing contact information for the purposes of RCW 74.39A.056(3) and 74.39A.250. Nothing in chapter 4, Laws of 2017 shall prevent an agency from confirming the licensing or certification status of a caregiver on an individual basis to allow consumers to ensure the licensing or certification status of an individual caregiver.

review PERC's conclusions of law de novo; however, great weight and substantial deference is given to PERC's interpretation of the public employees' collective bargaining statutes. *Id*.

Under the APA, we will grant relief from PERC's decision only if the Association demonstrates the decision is invalid under the statutory criteria in RCW 34.05.570(3). RCW 34.05.570(1); *Kitsap County*, 1 Wn. App. 2d at 155. RCW 34.05.570(3) provides, as relevant here, that:

> The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:
>> (a) The order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied;
>
> . . . .
>
>> (d) The agency has erroneously interpreted or applied the law.

The Association argues that PERC's decision is invalid because PERC misapplied the law, RCW 34.05.570(3)(d), and because the PRA exemption on which PERC's decision relied is unconstitutional, RCW 34.05.570(3)(a).

B.      UNFAIR LABOR PRACTICE

1.      Unfair Labor Practice Cause of Action

Relying on RCW 41.56.040, the Association argues that PERC misapplied the law when it determined that the Association failed to state a cause of action for an unfair labor practice. Specifically, the Association argues that its amended complaint established that the Department interfered with the right to organize as a matter of fact because an updated provider list was necessary to make its 30 percent showing of interest to trigger a representation election. We disagree.

7

Because this was an administrative proceeding, PERC's regulations governing pleadings apply. *See DeLacey v. Clover Park School Dist.*, 117 Wn. App. 291, 296, 69 P.3d 877 (2003). Under PERC regulations, complaints alleging unfair labor practices must contain "[c]lear and concise statements of the facts constituting the alleged unfair labor practices, including times, dates, places, and participants in occurrences." WAC 391-45-050(2). WAC 391-45-050(2) requires the facts establishing an unfair labor practice be contained "within the four corners of the complaint." *Apostolis v. City of Seattle*, 101 Wn. App. 300, 306-07, 3 P.3d 198 (2000). If the facts necessary to establish an unfair labor practice are not alleged within the complaint, then PERC does not err by dismissing the complaint for failure to state a cause of action. *Id.*

It is an unfair labor practice for a public employer to "interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed by [chapter 41.56 RCW]." RCW 41.56.140(1). RCW 41.56.040 specifically grants public employees the right to organize and designate representatives:

> No public employer, or other person, shall directly or indirectly, interfere with, restrain, coerce, or discriminate against any public employee or group of public employees in the free exercise of their right to organize and designate representatives of their own choosing for the purpose of collective bargaining, or in the free exercise of any other right under this chapter.

However, chapter 41.56 RCW does not require employers to provide information in order to assist attempts to organize. Refusal to release employee information has only been recognized as an unfair labor practice when the information requested was necessary to perform a specific right or duty under the collective bargaining statutes. *See* WAC 391-25-130; *City of Bellevue v. IAFF 1604*, 119 Wn.2d 373, 383, 831 P.2d 738 (1992).

Here, the Association contends that an updated provider list is necessary to exercise its right to organize because it is necessary to make the 30 percent showing of interest required to trigger a representation election. But RCW 41.56.040 confers only the right to organize, not the right to access information. Moreover, the Association fails to identify any specific right or duty it is obligated to perform under the collective bargaining statutes that would entitle it to the information. And the Association has provided no authority to support its assertion that, before it has made the required 30 percent showing of interest, it has specific rights or duties under the collective bargaining statutes. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) (in the absence of cited authority to support a proposition, the court is not required to search out authorities and "may assume that counsel, after diligent search, has found none"). Thus, the Association has failed to show that PERC misapplied the law by determining that the Association's complaint failed to state a cause of action.

2.      Unfair Labor Practice as a Matter of Law

The Association argues that PERC misapplied the law by deciding that the Department could not commit an unfair labor practice by simply complying with another law. This argument is misplaced.

PERC concluded that the Department did not commit an unfair labor practice by complying with the PRA. PERC's decision was made after analyzing whether the Association had a right to access the information under the collective bargaining statutes. Because PERC concluded the Association did not have a right to access the information under the collective bargaining laws, it concluded that complying with the PRA was not an unfair labor practice. Therefore, PERC did

not make a broad conclusion that an employer can never commit an unfair labor practice by simply complying with another law. We hold that this argument fails.

3. Failure to craft a remedy

The Association also argues that PERC erred as a matter of law by failing to exercise its discretion to craft a remedy and order disclosure of the list. However, this argument is premature. Here, PERC did not craft a remedy because it determined that the Department did not commit an unfair labor practice. Because there was no unfair labor practice, there was no remedy for PERC to craft.

C. CONSTITUTIONALITY OF RCW 42.56.640

1. First Amendment

The Association argues that RCW 42.56.640 violates the First Amendment right to freedom of speech and association because it is preventing providers from being able to change their certified bargaining representative. Specifically, the Association argues that "[c]ompelling [providers] to accept representation by a single representative, while simultaneously removing the only feasible means for [providers] to change who that representative is, violates [providers'] First Amendment association and speech rights." Br. of Appellant at 29 (emphasis omitted). The Association emphasizes that its argument is that RCW 42.56.640 results in forced association, which is the alleged burden on First Amendment rights. We disagree.

a. Legal principles

The First Amendment recognizes and protects a "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts*

*v. U.S. Jaycees*, 468 U.S. 609, 622, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984). This freedom to associate also "plainly presupposes a freedom not to associate." *Id*. at 623. Government actions that interfere with the ability to associate, such as imposing penalties on members of a disfavored groups, or regulations that require groups to accept members that it does not want infringe on the protected First Amendment right to associate. *Id*

However, the right to associate is not absolute. *Id*. "Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Id*; *see also State v. Dawley*, 11 Wn. App. 2d 527, 538, 455 P.3d 205 (2019) (restrictions on speech are subject to strict scrutiny and "'[S]trict scrutiny requires a statute be narrowly tailored to serve a compelling state interest.'") (quoting *State v. Williams*, 144 Wn.2d 197, 211, 26 P.3d 890 (2001)).

Therefore, in order to prevail on its First Amendment claim, the Association must first show that the regulation at issue, RCW 42.56.640, infringes on its First Amendment right to associate or not associate. *Roberts*, 628 U.S. at 622-23. If the Association makes such a showing, then RCW 42.56.640 is an unconstitutional infringement on the right to associate unless it is narrowly tailored to serve a compelling state interest. *Id*. at 623; *Dawley*, 11 Wn. App. 2d at 538.

b.     No freedom of association infringement

The Association argues that the State requires providers to be members of a union, but that the providers who are members of the Association do not want to associate with the current union.

Then the Association argues that because RCW 42.56.640 restricts its access to provider information, providers who do not want to associate with the incumbent union have no alternative.

The Association's argument glosses over the fact that there is a mechanism to change the bargaining representative. RCW 41.56.070 specifically provides the procedures for conducting an election to change a bargaining representative. Instead, the Association alleges that, without access to provider information it cannot communicate with providers and coordinate a change in representation under the procedures set forth in the statute. However, the Association has not established that it has been denied a meaningful opportunity to change representation. The Association has asserted that it is "impossible" to communicate with providers based on one failed attempt to make a sufficient showing of interest with a prior list and because a statewide traditional marketing campaign would be cost prohibitive. The fact that RCW 42.56.640 may make it more difficult for the Association to communicate with providers in its quest to garner a 30 percent showing of interest does not make it impossible to change the bargaining representative. It also does not create the Association's alleged "forced representation." The Association has a statutory mechanism for changing the representative and it has only explored limited options for changing that representation. Under these facts, the Association has not shown that RCW 42.56.640 results in forced representation that infringes upon its First Amendment rights.

2.      Fourteenth Amendment

The Association also argues that RCW 42.56.640 violates equal protection under the Fourteenth Amendment. Specifically, the Association argues that the statute burdens their First

Amendment rights and creates a class of people who are barred from having knowledge of who family child care provider are.

Equal protection requires that all persons similarly situated be treated alike. *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 608, 192 P.3d 306 (2008). The appropriate level of scrutiny depends on the nature of the classification or right involved. *Id.* Strict scrutiny applies to suspect classifications or regulations that burden fundamental rights. *Id.* at 608-09. "If a suspect classification or fundamental right is not involved, rational basis review applies." *Id.* at 609.

The Association argues that strict scrutiny applies because RCW 42.56.640 burdens their First Amendment rights. As discussed above, RCW 42.56.640 does not infringe on the Association's First Amendment rights. Therefore, this argument fails.

And the Association argues that RCW 42.56.640 "creates a class of people—all persons not affiliated with the incumbent union—who are barred from knowing who their publicly-employed family child care providers are." Br. of Appellant at 44. In other words, the classifications are members of the general public and the current certified bargaining representative. This distinction is based on the exception to RCW 42.56.640; specifically, RCW 42.56.645(d), which allows for the release of provider information to a certified bargaining representative.[4] The classification between the general public and the current certified bargaining representative is not a suspect classification because it is not based on race, alienage, or national

---

[4] RCW 42.56.645 contains other exceptions; however, the Association does not identify or argue that any other classifications violate equal protection.

origin; therefore, a rational basis review should apply. *See State v. Hirschfelder*, 170 Wn.2d 536, 550, 242 P.3d 876 (2010).

A classification will pass rational basis review "'so long as it bears a rational relation to some legitimate end.'" *Am. Legion Post*, 164 Wn.2d at 609 (quoting *Andersen v. King County*, 158 Wn.2d 1, 23, 138 P.3d 963 (2006)). "'A legislative distinction will withstand a minimum scrutiny analysis if, first, all members of the class are treated alike; second, there is a rational basis for treating differently those within and without the class; and third, the classification is rationally related to the purpose of the legislation.'" *Id.* (quoting *O'Hartigan v. Dep't of Pers.*, 118 Wn.2d 111, 122, 821 P.2d 44 (1991)). And, when performing a rational basis review, we "'may assume the existence of any conceivable state of facts that could provide a rational basis for the classification.'" *Id.* (quoting *Andersen y*, 158 Wn.2d at 31).

Here, members of the general public are all treated the same—they are all denied access to the records containing the providers' sensitive personal information. And there is a rational basis for treating the certified bargaining representative differently because the certified bargaining representative needs information regarding the bargaining unit to be able to fulfill its duties and responsibilities. *See IAFF 1604*, 119 Wn.2d at 383 (affirming PERC decision determining it is an unfair labor practice for an employer to withhold information from a certified bargaining representative when relevant).

The Association does not dispute RCW 42.56.640 passes the first two requirements of a rational basis review—all members of the class are treated alike and there is a rational basis for treating differently those within and without the class. However, the Association argues that RCW

42.56.640 does not pass rational basis review because family child care providers do not serve vulnerable populations and, therefore, protecting their information is not rationally related to the statute's purpose of protecting vulnerable populations.

RCW 42.56.640 was enacted through the initiative process. "'[I]n determining the meaning of a statute enacted through the initiative process, the court's purpose is to ascertain the collective intent of the voters who, acting in their legislative capacity, enacted the measure.'" *Am. Legion Post No. 149*, 164 Wn.2d at 585 (quoting *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 205, 11 P.3d 762, 27 P.3d 608 (2000)) (alteration in original). "'Where the language of an initiative enactment is plain, unambiguous, and well understood according to its natural and ordinary sense and meaning, the enactment is not subject to judicial interpretation.'" *Id.* (internal quotation marks omitted) (quoting *Amalgamated Transit Union Local 587*, 142 Wn.2d at 205).

Here, the plain language of RCW 42.56.640 is sufficient to ascertain whether the statute is rationally related to achieving the statue's purpose. The statute's purpose is to protect the sensitive personal information of caregivers for vulnerable populations to protect the vulnerable populations. Family child care providers are expressly included in the definition of "[i]n-home caregivers for vulnerable populations." RCW 42.56.640(2)(a). Children are regularly characterized as vulnerable and in need of state protection. For example, chapter 13.34 provides for the State to intervene in order to protect a child's health and safety. *See* RCW 13.34.020. Therefore, by its plain language, RCW 42.56.640 is rationally related to the purpose of protecting children by protecting the information of the children's caregivers.

No. 52673-5-II

Because RCW 42.56.640 is rationally related to its purpose of protecting vulnerable populations, it passes rational basis review. Accordingly, RCW 42.56.640 does not violate equal protection.

PERC did not misapply the law when it dismissed the Association's complaint for failure to state a cause of action. And, RCW 42.56.640 does not violate the First or Fourteenth Amendments. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Melnick, J.

16