123 P.3d 872 (2005)
130 Wash.App. 552
STATE of Washington, Respondent,
v.
Dennis A. CLINKENBEARD, Appellant.
No. 23189-5-III.
Court of Appeals of Washington, Division 3.
November 29, 2005.
*875 Robert C. Van Siclen, Michael J. Kelly, Van Siclen, Stocks & Firkins, Auburn, WA, for Appellant.
Karl F. Sloan, Okanogan County Prosecuting Attorney, Okanogan, WA, for Respondent.
THOMPSON, J. Pro Tem.[*]
¶ 1 Dennis Clinkenbeard appeals his conviction for sexual misconduct with a minor in the first degree. He contends that the pertinent statute, RCW 9A.44.093(1)(b), is unconstitutional on its face and as applied in his case. He argues that it violates substantive due process and equal protection guarantees because it criminalizes consensual, private, adult sexual conduct. He also asserts that the trial court erred when it allowed impeachment testimony to be used in the State's closing argument as substantive evidence of guilt. We reverse.

FACTS
¶ 2 This case arises out of a sexual relationship between an 18-year-old high school student, M.Q., and Dennis Clinkenbeard, a 62-year-old bus driver. While the evidence at trial indicated the sexual component to their relationship did not begin until after M.Q. turned 18, it also showed the romantic relationship began when M.Q. was only 12.
¶ 3 Mr. Clinkenbeard was employed as a bus driver for the Grand Coulee School District from 1997 until 2003. M.Q. was in the *876 fifth grade and was approximately 12 years old at the time that Mr. Clinkenbeard first began to drive her school bus. Mr. Clinkenbeard is 44 years older than M.Q.
¶ 4 Mr. Clinkenbeard paid special attention to M.Q. as her bus driver. He would give M.Q. personal notes and testimony at trial indicated that he placed his hands on her buttocks on more than one occasion. Once M.Q. became older and no longer rode on Mr. Clinkenbeard's bus route, the two passed notes through M.Q.'s younger brother. There were several occasions, however, when Mr. Clinkenbeard drove the bus for school events that M.Q. attended. During one of these trips, a friend of M.Q.'s witnessed the two kissing on the bus. When M.Q. was in ninth grade, she began taking music lessons from Mr. Clinkenbeard. The two talked frequently over the phone.
¶ 5 Mr. Clinkenbeard divorced his wife during M.Q.'s senior year of high school, shortly after M.Q. turned 18. He then moved his trailer next to M.Q.'s house. M.Q. told a friend that she and Mr. Clinkenbeard had had sex on more than one occasion. However, she said that they did not have sex until May 2003, which was after M.Q. had turned 18 but before she had graduated from high school. Neither M.Q. nor Mr. Clinkenbeard ever made any statements or otherwise indicated that they had sex prior to M.Q. turning 18.
¶ 6 Based on reports from several sources of an improper relationship between Mr. Clinkenbeard and M.Q., Sergeant Larry Hall and Officer Joseph Lauseng served a search warrant on M.Q.'s residence on June 4, 2003. In their search of her room, the officers uncovered several items relating to M.Q.'s relationship with Mr. Clinkenbeard, including gifts, photos, and personal letters.
¶ 7 Officer Lauseng also questioned M.Q. about her relationship with Mr. Clinkenbeard. Specifically, the officers tried to find out if the two had ever been intimate or had sex. Sergeant Hall asked if M.Q. wanted him to tell her mom that M.Q. and Mr. Clinkenbeard were sexually involved. M.Q. responded that, "[n]ews like this, a mother should hear from her daughter." Report of Proceedings (RP) I at 125.
¶ 8 At trial, M.Q. explained that her statement was not an admission that she and Mr. Clinkenbeard had sex, but was merely an attempt to end the line of questioning from Sergeant Hall. When asked directly if she and Mr. Clinkenbeard had sex, M.Q. stated, "No." RP II at 77.
¶ 9 Mr. Clinkenbeard was charged on June 9, 2003, with two counts of child molestation in the second degree, one count of sexual misconduct in the first degree, and one count of communication with a minor for immoral purposes. He was ultimately tried on the molestation and sexual misconduct charges only. A jury found Mr. Clinkenbeard not guilty of the two counts of molestation, but convicted him of sexual misconduct with a minor in the first degree.

ANALYSIS

I. DUE PROCESS AND EQUAL PROTECTION CHALLENGES TO RCW 9A.44.093(1)(b)
¶ 10 Mr. Clinkenbeard contends that the United States Supreme Court decision in Lawrence v. Texas has established that the right of consenting adults to engage in private sexual behavior is protected under the fundamental rights of privacy and intimate association. Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003). He further asserts that RCW 9A.44.093(1)(b) is unconstitutional on its face and as applied in his case because this statute intrudes on the fundamental rights of privacy and intimate association and is not necessary to serve a compelling state interest.
¶ 11 RCW 9A.44.093(1)(b) makes it a class C felony for any school employee to have sexual intercourse with a registered student of that school who is at least 16 years old if there is an age difference of five years or more between the employee and the student. By its terms, this statute can be applied to criminally prosecute a public school employee who has sexual intercourse with a student who is legally an adult (over the age of 18) and does not require the school employee to be in a position of authority or supervision over the students.
*877 ¶ 12 "The interpretation of a statute and the determination of whether a statute violates the United States Constitution are issues of law that are reviewed de novo." In re Parentage of C.A.M.A., 154 Wash.2d 52, 57, 109 P.3d 405 (2005). Where the constitutionality of a statute is challenged, the statute is presumed constitutional and the burden is on the party challenging the statute to prove its unconstitutionality beyond a reasonable doubt. Tunstall v. Bergeson, 141 Wash.2d 201, 220, 5 P.3d 691 (2000). Courts are generally hesitant to strike a duly enacted statute unless fully convinced that the statute violated the constitution. Id. If possible, a statute should be construed as constitutional. State v. Farmer, 116 Wash.2d 414, 419-20, 805 P.2d 200, 812 P.2d 858 (1991).

A. Facial constitutionality of RCW 9A.44.093(1)(b)
¶ 13 Mr. Clinkenbeard asserts that RCW 9A.44.093(1)(b) is unconstitutional on its face. However, in order to make a facial challenge to this statute, he must show that there is no set of circumstances in which the statute, as currently written, can be constitutionally applied. City of Redmond v. Moore, 151 Wash.2d 664, 669, 91 P.3d 875 (2004). "The remedy for holding a statute facially unconstitutional is to render the statute totally inoperative." Id.
¶ 14 Mr. Clinkenbeard cannot show that RCW 9A.44.093(1)(b) is facially unconstitutional since he cannot show that there is no set of circumstances in which it can be constitutionally applied. The premise behind Mr. Clinkenbeard's asserted constitutional violation is that Lawrence established a fundamental right to "intimate association" that includes all private, consensual sexual conduct between adults. Even assuming that there is a fundamental right to intimate association between any and all consenting adults, the statute at issue also applies to those students who are at least 16 but who are not yet 18. These students are not yet legal adults. Because the decision in Lawrence is very clearly limited to consensual adult sexual behavior, and does not recognize any such fundamental right in minors, there is no constitutional violation where the set of circumstances includes intercourse between a public school employee and a minor.[1]

B. Constitutionality of RCW 9A.44.093(1)(b) as applied in this case
¶ 15 Mr. Clinkenbeard argues that RCW 9A.44.093(1)(b), as applied in his case, violated his rights to due process and equal protection under the law. An as-applied challenge to the constitutional validity of a statute is characterized by a party's allegation that application of the statute in the specific context of the party's actions is unconstitutional. Moore, 151 Wash.2d at 668-69, 91 P.3d 875. Holding a statute unconstitutional as applied prohibits future application of the statute in a similar context, but the statute is not totally invalidated. Id. at 669, 91 P.3d 875. A statute is presumed constitutional and the party challenging the statute has the burden of proving its unconstitutionality beyond a reasonable doubt. Farmer, 116 Wash.2d at 419, 805 P.2d 200.

1. Lawrence v. Texas and standard of review

¶ 16 Two potential fundamental rights are implicated in the exercise of personal liberty to engage in private, adult, consensual sexual conduct: the right to freedom of association or intimate association, and the right to privacy.
¶ 17 The term "freedom of association" refers to the choice to enter into and maintain certain intimate human relationships. Roberts v. United States Jaycees, 468 U.S. 609, 617-18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). This choice is protected against undue intrusion by the state because this freedom is a fundamental element of personal liberty. Id. at 618, 104 S.Ct. 3244. Additionally, the formation and preservation of intimate personal relationships is afforded a substantial measure of *878 protection from unjustified interference from the state. Id.
¶ 18 There is also an individual right to privacy which, although not expressly guaranteed in the United States Constitution, is implicitly one aspect of the liberty that is protected by the due process clause of the Fourteenth Amendment, or as one of the "penumbras" of the express guarantees of the Bill of Rights. See Carey v. Population Servs. Int'l, 431 U.S. 678, 684, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); Griswold v. Connecticut, 381 U.S. 479, 484-85, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). This right to privacy also includes the right of personal autonomy, particularly in matters pertaining to marriage, procreation, contraception, family relationships, and child-rearing. Bedford v. Sugarman, 112 Wash.2d 500, 513, 772 P.2d 486 (1989).
¶ 19 The Court in Lawrence invalidated a Texas statute that made it a misdemeanor offense for two persons of the same sex to engage in certain intimate conduct. Lawrence, 539 U.S. at 563-64, 123 S.Ct. 2472. Specifically, the Court determined that the statute violated the guarantees of substantive due process because it regulated a "personal relationship that, whether or not entitled to formal recognition in the law, is within the liberty of persons to choose without being punished as criminals." Id. at 567, 123 S.Ct. 2472.
¶ 20 The Lawrence Court also looked to an "emerging awareness that liberty gives substantial protection to adult persons in deciding how to conduct their private lives in matters pertaining to sex." Id. at 572, 123 S.Ct. 2472. This implies that part of the substantive protections of due process includes personal decisions relating to sexual practices either in the bedroom or in other private places.
¶ 21 The Court also noted that the state and courts should avoid interfering in private relationships, "absent injury to a person or abuse of an institution the law protects." Id. at 567, 123 S.Ct. 2472. Therefore, the decision in Lawrence may also be fairly said to restrict what courts should consider a legitimate state interest when the conduct in question is private, consensual sexual activity between adults.
¶ 22 Additionally, the Lawrence opinion does not employ a fundamental rights analysis, but instead applied a rational basis review to the challenged statute. Id. at 578, 123 S.Ct. 2472. The basis of the court's decision was that the statute at issue, "furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." Id. This application of rational basis review implicitly asserts that the right of consenting adults to engage in private, sexual behavior does not rise to the level of a fundamental right.
¶ 23 While the decision in Lawrence restricts the degree to which government may regulate private, adult, consensual sexual behavior, the court did not establish that this behavior rises to the level of a fundamental right. Moreover, even if Lawrence did establish that heightened review was required in some cases of private, consensual, adult sexual activity, the decision specifically points out that these protections do not apply to cases that may involve minors, those who are vulnerable to coercion, and those who are situated in relationships where consent may not easily be refused. Id. RCW 9A.44.093(1)(b) addresses conduct where all three potential situations are present, as it prevents much older adults from abusing their access to students in order to exploit these students sexually.
¶ 24 Because Lawrence v. Texas does not establish a fundamental right to all consensual adult sexual conduct, we apply a rational basis review to Mr. Clinkenbeard's as-applied due process and equal protection claims.

2. Substantive due process
¶ 25 The right to due process is protected by the Fourteenth Amendment and article I, section 3 of the Washington Constitution. The substantive component of the Fourteenth Amendment's due process clause forbids the government to infringe on fundamental liberty interests unless the infringement is narrowly tailored to serve a compelling state interest. Reno v. Flores, 507 U.S. 292, 301-02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).
*879 ¶ 26 Generally, when there is no alleged violation of a fundamental right, the challenged state action need only be rationally related to a legitimate government interest. See, e.g., City of Bremerton v. Widell, 146 Wash.2d 561, 580, 51 P.3d 733 (2002); Washington v. Glucksberg, 521 U.S. 702, 722, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). The defendant challenging the constitutionality of a statute must show that the law is so unrelated to the achievement of a legitimate purpose that the law is arbitrary or obsolete. Seeley v. State, 132 Wash.2d 776, 813, 940 P.2d 604 (1997).
¶ 27 The police powers of government allow the legislature to enact laws in the interests of the people. Weden v. San Juan County, 135 Wash.2d 678, 691, 958 P.2d 273 (1998). The scope of that power is broad and encompasses measures which bear a reasonable and substantial relation to promotion of the general welfare of the people. Id. at 692, 958 P.2d 273. In legislating for the general health, safety, and welfare of the people, certain constraints on individual freedom have traditionally been imposed by the state. State v. Smith, 93 Wash.2d 329, 339, 610 P.2d 869 (1980). It is not the proper function of the courts to substitute their judgment for that of the legislature with respect to the necessity of these constraints. Id.
¶ 28 The state's interest in protecting children from sexual exploitation and abuse is a compelling government objective that justifies at least some regulation of sexual conduct, even where it infringes on the right to privacy. Farmer, 116 Wash.2d at 422, 805 P.2d 200. Courts show even greater deference to the determinations of the state in the context of education. See, e.g., Grutter v. Bollinger, 539 U.S. 306, 328, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003); Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 273, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988).
¶ 29 The state is constitutionally obligated to provide an education to its children. CONST. art. IX. As part of that duty, the state has a legitimate interest in providing a safe school environment. Among the concerns that support RCW 9A.44.093(1)(b) is the fear that unsupervised access to children could be used by adults to groom or coerce the students into sexual exploitation. In this case, this concern seems especially cogent, as Mr. Clinkenbeard appears to have begun his sexual overtures toward M.Q. when she was only 12 years old.
¶ 30 RCW 9A.44.093(1)(b) is relevant to the concerns of protecting children from sexual exploitation. The statute makes it illegal for those in contact with much younger children without outside supervision to use their access to students for sexual exploitation. Because this statute is not wholly irrelevant to the goal of preventing the exploitation of students, and therefore is not arbitrary, RCW 9A.44.093(1)(b) did not violate Mr. Clinkenbeard's right to substantive due process in this case.

3. Equal protection
¶ 31 The Fourteenth Amendment provides that, "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws," and the Washington State Constitution provides for the right of equal protection in article I, section 12.
¶ 32 The equal protection clauses of the federal and state constitutions require that persons similarly situated with respect to a legitimate purpose of the law receive like treatment. State v. Harner, 153 Wash.2d 228, 235, 103 P.3d 738 (2004). At the threshold of an equal protection determination, the court must first identify the standard of review. O'Hartigan v. Dep't of Pers., 118 Wash.2d 111, 122, 821 P.2d 44 (1991).
¶ 33 One of three tests may be used to determine whether the right to equal protection has been violated. First, strict scrutiny applies when a classification affects a suspect class or a fundamental right. Westerman v. Cary, 125 Wash.2d 277, 294, 892 P.2d 1067 (1994). Under the strict scrutiny test, a law may be upheld only if it is shown to be necessary for a compelling state interest. Id. Second, the intermediate scrutiny test may apply in certain limited circumstances where the classification affects an important right and applies to a semi-suspect class not accountable for its status. Id. Under *880 this test, the law must fairly be viewed as furthering a substantial interest of the state. City of Richland v. Michel, 89 Wash.App. 764, 771, 950 P.2d 10 (1998). Third, the rational basis test applies when the challenged classification involves neither a fundamental right nor a suspect classification. O'Hartigan, 118 Wash.2d at 122, 821 P.2d 44. Under the rational basis test, the law is subject to minimal scrutiny and will be upheld unless it rests on grounds wholly irrelevant to the achievement of a legitimate state objective. Westerman, 125 Wash.2d at 294-95, 892 P.2d 1067.
¶ 34 Because Lawrence did not recognize a fundamental right of consenting adults to engage in private, sexual behavior without government interference, strict scrutiny does not apply in this case.
¶ 35 However, Mr. Clinkenbeard may have an argument for the application of intermediate scrutiny. While the Lawrence court did not establish that private sexual behavior between consenting adults was protected as a fundamental right, the court did make clear that this area of autonomy is of great importance. The decision cautions strongly against the states interfering in private relationships. Lawrence, 539 U.S. at 567, 123 S.Ct. 2472. The court also referred to the importance of safeguarding the individual liberty of adult persons to decide for themselves how to conduct their private lives in matters relating to sex. Id. at 572, 123 S.Ct. 2472. Therefore, the Lawrence decision may have established private sexual behavior between consenting adults as an important right.
¶ 36 Even assuming that Lawrence did establish an important right, intermediate scrutiny does not apply to this case because Mr. Clinkenbeard has not demonstrated his membership in a semi-suspect class. The class at issue in RCW 9A.44.093(1)(b) is public school employees. Prior decisions indicate that a particular employment status does not create a semi-suspect class. See, e.g., Griffin v. Eller, 130 Wash.2d 58, 65, 922 P.2d 788 (1996). Mr. Clinkenbeard has not demonstrated either how this class is semi-suspect, or how it is not accountable for its status. Therefore, intermediate scrutiny should not be applied in this case.
¶ 37 Because this case does not involve the infringement of a fundamental right, or the infringement of an important right and disparate treatment of a semi-suspect class, we apply the rational basis review to Mr. Clinkenbeard's claim. In order to invalidate the statute based on equal protection grounds, Mr. Clinkenbeard must show, beyond a reasonable doubt, that no state of facts exist that justify the challenged classification. Smith, 93 Wash.2d at 337, 610 P.2d 869. A legislative distinction will survive the rational basis test if (1) all members of the class are treated alike; (2) there is a rational basis for treating differently those within and outside of the class; and (3) the classification is rationally related to the purpose of the legislation. O'Hartigan, 118 Wash.2d at 122, 821 P.2d 44.
¶ 38 Here, the pertinent class is public school employees. There is nothing else in the text of RCW 9A.44.093(1)(b) that distinguishes among the public school employees that are covered by the statute. The statute singles out public school employees because they have unique access to children, often in an unsupervised context, and can use that access to groom or coerce children or young adults into exploitive or abusive conduct. Given the important goals of providing a safe school environment for children and preventing the sexual exploitation of children, this distinction has a basis that is rationally related to those important and compelling government purposes. As such, the application of RCW 9A.44.093(1)(b) to Mr. Clinkenbeard's case did not constitute a violation of his right to equal protection.
¶ 39 We hold that RCW 9A.44.093(1)(b) is not facially unconstitutional as a violation of substantive due process or equal protection. We also hold that there was no constitutional violation based on the application of RCW 9A.44.093(1)(b) to Mr. Clinkenbeard's case.

II. USE OF IMPEACHMENT EVIDENCE AS SUBSTANTIVE EVIDENCE OF GUILT
¶ 40 Mr. Clinkenbeard alleges that the trial court improperly permitted impeachment *881 testimony to be used as substantive evidence of guilt in his case. He further argues that, absent the out-of-court statements made by M.Q. about having sex with Mr. Clinkenbeard, there is insufficient evidence to support his conviction.
¶ 41 Mr. Clinkenbeard's assertion presents two questions for review. First, did the State improperly use impeachment evidence as substantive evidence of guilt? Second, if the impeachment statements were improperly used, was the remaining evidence sufficient to support the conviction? From the record before this court, it appears that the State did use impeachment evidence as substantive evidence of guilt, and that this was the sole evidence of the essential element of sexual intercourse in this case. Because there was no other evidence from which a reasonable jury could have found the essential element of sexual intercourse, we hold that there was insufficient evidence to convict Mr. Clinkenbeard of sexual misconduct with a minor and reverse his conviction with prejudice.

A. State's use of impeachment evidence as substantive evidence of guilt
¶ 42 We review a trial court's rulings on the admissibility of the evidence under an abuse of discretion standard. State v. Powell, 126 Wash.2d 244, 258, 893 P.2d 615 (1995). An abuse of discretion exists when the trial court's exercise of discretion is manifestly unreasonable or is based upon untenable grounds. Id.
¶ 43 Hearsay is a statement, other than one made by the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted. ER 801(c). Generally, hearsay is not admissible as evidence unless specifically permitted by the rules of evidence, by court rules, or by statute. ER 802.
¶ 44 An out-of-court-statement is hearsay when offered to prove the truth of the matter asserted, even if the statement was made and acknowledged by someone who is an in-court witness at trial. State v. Sua, 115 Wash.App. 29, 41, 60 P.3d 1234 (2003).
¶ 45 Mr. Clinkenbeard was charged with sexual misconduct with a minor under RCW 9A.44.093(1)(b). This statute makes it a crime for a public school employee to have sex with a student if the two are not married to each other and the employee is at least five years older than the student. RCW 9A.44.093(1)(b). Therefore, the State was required to prove that Mr. Clinkenbeard and M.Q. had sexual intercourse as part of the sexual misconduct with a minor charge.
¶ 46 Statements made by M.Q. to others were used as the sole proof of the element of sexual intercourse in this case. These statements were allowed in as impeachment evidence based on M.Q.'s denial at trial that she and Mr. Clinkenbeard had sexual intercourse. These statements, as hearsay, would not otherwise have been admissible.
¶ 47 A witness may be impeached with a prior out-of-court statement of a material fact that is inconsistent with his testimony in court, even if such a statement would otherwise be inadmissible as hearsay. State v. Dickenson, 48 Wash.App. 457, 466, 740 P.2d 312 (1987). Impeachment evidence affects the witness's credibility but is not probative of the substantive facts encompassed by the evidence. State v. Johnson, 40 Wash.App. 371, 377, 699 P.2d 221 (1985).
¶ 48 Because such evidence cannot be used as substantive proof of guilt, the State may not use impeachment as a guise for submitting to the jury substantive evidence that would otherwise be inadmissible. State v. Babich, 68 Wash.App. 438, 444, 842 P.2d 1053 (1993). The concern behind this prohibition is that prosecutors will exploit the jury's difficulty in making the subtle distinction between impeachment and substantive evidence. See, e.g., State v. Hancock, 109 Wash.2d 760, 763, 748 P.2d 611 (1988).
¶ 49 Here, the only evidence that established sexual intercourse between M.Q. and Mr. Clinkenbeard came from the impeachment evidence brought out on the State's direct examination of Sergeant Hall and from the testimony of one of M.Q.'s friends, Reanna Gall. The record does contain at least one objection by Mr. Clinkenbeard to the testimony *882 provided by Ms. Gall regarding anything that M.Q. might have said.
¶ 50 The State represented to the court that any questions directed to Ms. Gall about what M.Q. might have said regarding her relationship with Mr. Clinkenbeard were solely for impeachment purposes and would be limited to the scope of questions previously put to M.Q. The State asserted that the purpose of the testimony regarding M.Q.'s statements was to impeach M.Q.'s denial that she made the statements and of the sexual relationship between her and Mr. Clinkenbeard.
¶ 51 The admission of M.Q.'s statement to Sergeant Hall would ordinarily be a violation of the hearsay rule. While the record is less clear as to the basis for admitting Sergeant Hall's testimony as to M.Q.'s statement, the statement appears to be impeachment evidence against M.Q.'s denial that the sexual intercourse occurred. The admission of M.Q.'s statement is permissible for this purpose, as the State is allowed to impeach its own witness using a prior inconsistent statement. ER 607. This is the case even if the in-court witness acknowledges that the prior inconsistent statement was made. See, e.g., Sua, 115 Wash.App. at 33-34, 60 P.3d 1234.
¶ 52 Despite the fact that the proper use of M.Q.'s prior inconsistent statements was for impeachment purposes only, the State used them as substantive evidence of guilt at trial. In its closing statements to the jury, the prosecution asserted that M.Q.'s statements to Sergeant Hall and Ms. Gall were proof of sexual intercourse between M.Q. and Mr. Clinkenbeard. Therefore, we hold that this was an improper use of impeachment testimony as substantive evidence.
¶ 53 The State urges that the issue of the use of impeachment testimony as substantive evidence was waived by Mr. Clinkenbeard because he failed to make an objection on the record. However, the trial court in this case made no record of any of the objections, arguments, or rulings that took place outside of the presence of the jury. The trial court noted that it had no court reporter and, in order for the parties to discuss anything outside the presence of the jury, the court had to "turn off the sound system and then there's no record." RP II at 15-16.
¶ 54 While normally the onus is on the appellant to perfect the trial record, a criminal defendant also has a due process right to a record of sufficient completeness for review of errors. State v. Larson, 62 Wash.2d 64, 66-67, 381 P.2d 120 (1963); State ex rel. Henderson v. Woods, 72 Wash. App. 544, 550-52, 865 P.2d 33 (1994). In light of the fact that the omissions in the record are extensive, and there is virtually no way for Mr. Clinkenbeard to supplement the record or to prove the specific content of the omitted sections, we decline to deem this issue waived.

B. Sufficiency of the evidence
¶ 55 Having determined that the State improperly used impeachment evidence as substantive evidence in this case, we must next determine whether there was any other evidence sufficient to support Mr. Clinkenbeard's conviction for sexual misconduct with a minor.
¶ 56 Evidence is sufficient to support a conviction if, when taken in the light most favorable to the state, the evidence would allow any rational trier of fact to find the elements of the crime beyond a reasonable doubt. State v. DeVries, 149 Wash.2d 842, 849, 72 P.3d 748 (2003). A claim of insufficiency admits the truth of all of the State's evidence and all of the inferences that can reasonably be drawn from it. Id. However, there must be at least substantial evidence that supports the elements of the crime charged. State v. Cleman, 18 Wash. App. 495, 498, 568 P.2d 832 (1977).
¶ 57 In this case, the State was required to prove beyond a reasonable doubt that M.Q. and Mr. Clinkenbeard engaged in sexual intercourse as an essential element of the crime of first degree sexual misconduct with a minor. "Sexual intercourse" is defined according to its ordinary meaning, and includes any penetration that is not for medical treatment or diagnostic purposes as well as any act of sexual contact between the sex organs *883 of one person and the mouth or anus of another. RCW 9A.44.010(1).
¶ 58 In the absence of M.Q.'s statements to Sergeant Hall and Ms. Gall regarding having sex with Mr. Clinkenbeard, there is no other evidence in this case that would establish the conduct that is required to prove sexual intercourse. Because there is no other evidence at all in the record regarding the specific act of sexual intercourse, there is insufficient evidence to allow a rational trier of fact to find the elements of the crime beyond a reasonable doubt. As such, there is insufficient evidence in this case to support Mr. Clinkenbeard's conviction for first degree sexual misconduct with a minor.
¶ 59 A defendant whose conviction is reversed due to insufficient evidence cannot be retried. DeVries, 149 Wash.2d at 853, 72 P.3d 748. Therefore, we reverse Mr. Clinkenbeard's conviction with prejudice.
WE CONCUR: KATO, C.J., and BROWN, J.
NOTES
[*] Judge Philip J. Thompson is serving as judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.
[1] The court in Lawrence makes clear that nothing in its decision affects the ability of states to regulate sexual conduct with minors. Lawrence, 539 U.S. at 578, 123 S.Ct. 2472.