IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| K.F.D., | No. 83047-3-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, | |
| Respondent. | |

CHUNG, J. — The State charged K.F.D. with fourth degree assault of another minor, E.D. At trial, K.F.D. sought to impeach E.D. with testimony from a police officer about a statement E.D. had made, but the court did not allow the testimony. After a bench trial, K.F.D. was found guilty. On appeal, he argues the trial court violated his constitutional right to present a defense by excluding the officer's testimony about E.D.'s statement. We hold the trial court's exclusion of the testimony was not an abuse of discretion and did not violate K.F.D.'s right to present a defense. We therefore affirm.

## FACTS

In May 2020, K.F.D., age 17 at the time, went fishing at Lake Ballinger. E.D., age 14, who had fished with K.F.D. several times previously, was also there. E.D. said that at one point, K.F.D. got a knife out to cut his own fishing line and said, "You better be careful or I'm going to stab you," but E.D. "thought nothing of it because we were joking."

Later, K.F.D. asked E.D. to watch his fishing gear so he could go to the store. E.D. refused. According to E.D., K.F.D. got angry as a result and placed him in a "headlock" or "choke hold." K.F.D. testified that they were "messing around like normal teenagers do," and he "ended up picking [E.D.] up joking around saying I'm going to toss him in to the water." E.D. testified that K.F.D. did not stop when E.D. asked; K.F.D. stopped only at the request of a girl who was present. A nearby adult, Brent Hozjan, testified that E.D. "seemed upset, really upset."

E.D. called the police. Four officers responded, and K.F.D. was arrested near a bus stop near the lake. Officer Eugene Shin handcuffed K.F.D, read him his Miranda rights,[1] and interviewed him. Officer Kyle O'Hagan talked to E.D. for 10-20 minutes and obtained a written statement from him. The police released K.F.D. at the scene. The State charged him with fourth degree assault the following week.

At trial, K.F.D. called Officer O'Hagan to impeach E.D.'s testimony on various points, including E.D.'s response of "no" to the State's question whether he and K.F.D. would ever punch each other. K.F.D. wanted Officer O'Hagan to testify that E.D. told him at the scene that K.F.D. had punched E.D. in the arm. While the court allowed Officer O'Hagan to testify on some issues, it did not allow him to testify about E.D.'s "arm punch" statement, ruling that it was not proper impeachment with a prior inconsistent statement, because no one had specifically asked E.D. on the stand about whether he had been punched in the

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

arm, nor was it admissible for the purpose of showing Officer O'Hagan's perception of the incident. At the end of the trial, the court determined K.F.D. was guilty of fourth degree assault.

K.F.D. appeals, claiming the trial court violated his constitutional right to present a defense because it did not allow him to admit "all" his evidence impeaching E.D.[2]

ANALYSIS

Criminal defendants have a constitutional right to present a defense. U.S. CONST. amend. VI; WASH. CONST. art. I, section 22; Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). When exercising this right, a defendant still "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Chambers, 410 U.S. at 302, cited in State v. Cayetano-Jaimes, 190 Wn. App. 286, 296, 359 P.3d 919 (2015).

The test for reviewing a claimed violation of a defendant's constitutional right to present a defense proceeds in two steps. State v. Arndt, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019). First, the trial court's evidentiary rulings are reviewed for abuse of discretion. Arndt, 194 Wn.2d at 797. Second, if the trial court did not abuse its discretion or if abuse was harmless, an appellate court reviews de novo whether the exclusion of evidence violated a defendant's

---

[2] K.F.D. conceded the sufficiency of the evidence supporting his disposition at oral argument. TVW, https://tvw.org/video/division-1-court-of-appeals2022091079/?eventID=2022091079 at 7:25 (last visited September 29, 2022).

constitutional right to present a defense. State v. Jennings, 199 Wn.2d 53, 58-59, 502 P.3d 1255 (2022).

I. Whether the Trial Court's Evidentiary Rulings were an Abuse of Discretion

Under an abuse of discretion standard, the reviewing court will find error only when the trial court's decision (1) adopts a view that no reasonable person would take and is thus manifestly unreasonable, (2) rests on facts unsupported in the record and is thus based on untenable grounds, or (3) was reached by applying the wrong legal standard and is thus made for untenable reasons. State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012) (internal quotations omitted).

At trial, E.D. testified he and K.F.D. were friends. The State asked E.D. if he and K.F.D. would ever pick each other up, punch each other, or shove each other. E.D. answered "no" to each question. On cross-examination, E.D. said he could not recall how long he had known K.F.D., and K.F.D. impeached E.D.'s testimony with a recording of a prior interview in which E.D. said he had known K.F.D. for "two months." However, K.F.D. never asked E.D. about whether K.F.D. had previously punched E.D. in the arm.

To further his contention that he had been joking with E.D. and his actions were in the nature of horseplay, K.F.D. sought to impeach E.D. with Officer O'Hagan's testimony that E.D. said at the scene that K.F.D. had previously punched him in the arm.[3] The State objected because "there wasn't actually any

---

[3] While K.F.D.'s "joking and playful manner," or horseplay, is central to K.F.D.'s theory of defense that no harm or offense was done to E.D., corroboration of horseplay, however "slight," was never a defense theory for admitting E.D.'s statement to Officer O'Hagan.

testimony from [E.D.] about punching . . . [T]here was just no testimony about that." The court agreed, and K.F.D. admitted he "did not ask [E.D.] specifically if he had been punched." K.F.D. then alternatively offered the statement for the non-hearsay purpose of showing "Officer O'Hagan's perception of what was going on during this incident." The trial court did not allow the statement, reasoning, "As far as the punch on the arm, I don't think that . . . the impact that has on the officer is relevant to any decision that I need to make. So I'm not going to allow that at this time."

K.F.D. argues the trial court erred by excluding Officer O'Hagan's testimony about E.D.'s statement because it was admissible either as a prior inconsistent statement or for the non-hearsay purpose of establishing Officer O'Hagan's perception of the events. The State argues E.D. was not given an opportunity to explain or deny his statement at trial, so extrinsic proof of a prior inconsistent statement is not admissible.[4] We agree with the State.

"A prior inconsistent statement is a comparison of something the witness said out of court with a statement the witness made on the stand." State v. Spenser, 111 Wn. App. 401, 409, 45 P.3d 209 (2002). **"Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."** ER 613(b). Before an impeaching party can introduce

---

[4] The State also argues Officer O'Hagan's statement is not inconsistent with E.D.'s testimony and that E.D.'s testimony was not a material omission. The lack of any opportunity for E.D. to explain or deny is dispositive, so we need not reach these arguments.

extrinsic evidence of a prior inconsistent statement, that party must either call the statement to the witness's attention while the witness is on the stand or arrange for the witness to remain in attendance to be given the opportunity to explain or deny. State v. Horton, 116 Wn. App. 909, 915, 68 P.3d 1145 (2003). If the witness responds to foundation questions by admitting making the prior inconsistent statement, then extrinsic evidence of the statement is inadmissible. State v. Dixon, 159 Wn.2d 65, 76, 147 P.3d 991 (2006).

Here, K.F.D. concedes that for him to be able to impeach E.D. about the "arm punch" statement, E.D. had to be afforded an opportunity to explain or deny it. He further concedes that E.D.'s testimony "did not mention any arm punch," and that K.F.D. "did not question E.D. directly about his arm punching statement made to Officer O'Hagan." Because E.D. was not given an opportunity to explain or deny the statement, extrinsic proof of E.D.'s prior statement to Officer O'Hagan was not admissible under ER 613(b).[5]

Alternatively, K.F.D. argues Officer O'Hagan's testimony about the arm punch statement was admissible because it was not offered to establish the truth of whether K.F.D. punched E.D. in the arm, but for the non-hearsay purpose of establishing Officer O'Hagan's perception of the event at the scene. "Out-of-court statements offered to show their effect on the listener, regardless of their truth,

---

[5] K.F.D. also argued below that the trial court should allow E.D.'s arm punch statement as prior sworn testimony. Under ER 801(d)(1)(i), a prior sworn statement inconsistent with a declarant witness's subsequent testimony must have been "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding." At oral argument, confirmed by a subsequent submission to this court, K.F.D. conceded E.D.'s arm punch statement to Officer O'Hagan at the scene was not in his sworn written statement to the police. TVW, https://tvw.org/video/division-1-court-of-appeals-2022091079/?eventID=2022091079 at 18:40 (last visited October 1, 2022).

are not hearsay." State v. Heutink, 12 Wn. App. 2d 336, 356-57, 458 P.3d 796 (2020) (quoting Henderson v. Tyrrell, 80 Wn. App. 592, 620, 910 P.2d 522 (1996)). However, to be admissible on that basis, the listener's state of mind must be relevant to some material fact. Heutlink, 12 Wn. App. 2d at 357. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. ER 401. "Assault is an intentional touching or striking of another person that is harmful or offensive, regardless of whether it results in physical injury." State v. Osman, 192 Wn. App. 355, 378, 366 P.3d 956 (2016) (internal quotations omitted) (construing the elements of fourth degree assault, RCW 9A.36.041). Here, the impact of E.D.'s statement on Officer O'Hagan's perceptions at the scene is not relevant to any fact of consequence to the charge of fourth degree assault.[6]

E.D.'s statement to Officer O'Hagan at the scene was not admissible either as a prior inconsistent statement or for a non-hearsay purpose. Therefore, the trial court did not abuse its discretion by excluding Officer O'Hagan's testimony about the statement.[7]

II. Whether K.F.D. was Prevented from Presenting a Defense

---

[6] K.F.D. also argues on appeal that E.D.'s statement to Officer O'Hagan could be offered for the non-hearsay purpose of corroborating that E.D. and K.F.D. were engaged in horseplay. But K.F.D. provides no record citation to show that this was argued below. This court need not consider an issue raised for the first time on appeal. "As a general rule, appellate courts will not consider issues raised for the first time on appeal." State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995).
[7] Because we hold that the trial court did not abuse its discretion, we need not conduct a separate harmless error analysis.

K.F.D. argues that excluding Officer O'Hagan's testimony about E.D.'s "arm punch" statement violated his constitutional right to present a defense. While a defendant has the constitutional right to present a defense, this right is not without limitation. State v. Orn, 197 Wn.2d 343, 352, 482 P.3d 913 (2021). "[T]he Constitution permits judges 'to exclude evidence that is "repetitive … only marginally relevant" or poses an undue risk of "harassment, prejudice, [or] confusion of the issues." ' " Orn, 197 Wn.2d at 352 (citing Holmes v. South Carolina, 547 U.S. 319, 326-27, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (alterations in original) (other internal citations omitted)). If evidence is not relevant under ER 401, there is no constitutional problem in excluding it. State v. Hudlow, 99 Wn.2d 1, 15, 659 P.2d 514 (1983). "If the evidence is relevant, the reviewing court must weigh the defendant's right to produce relevant evidence against the State's interest in limiting the prejudicial effects of that evidence to determine if excluding the evidence violates the defendant's constitutional rights." Jennings, 199 Wn.2d at 63 (citing Hudlow, 99 Wn.2d at 16; Orn, 197 Wn.2d at 353).

Here, E.D.'s statement to Officer O'Hagan was at least minimally relevant, as it would have impeached E.D.'s testimony that K.F.D. had never punched him, thus placing a key witness's credibility at issue. Generally, "the more essential the witness is to the prosecution's case, the more latitude the defense should be given to explore fundamental elements such as motive, bias, [or] credibility." State v. Darden, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002), cited in Orn, 197 Wn.2d at 354.

However, our Supreme Court has recognized "a distinction between evidence that merely bolsters credibility and evidence that is necessary to present a defense." Jennings, 199 Wn.2d at 66-67. In Jennings, the defendant sought admission of a toxicology report to corroborate his defense of self-defense, that he shot and killed the victim because the victim was high on methamphetamine. Id. at 57. After determining the trial court had not abused its discretion by excluding the report as speculative, the Court balanced the defendant's right to present the toxicology evidence against the State's interest in limiting the prejudicial effects of the evidence. Id. at 65-66. The Court reasoned that, although the report would have corroborated the defendant's belief that the victim was high on methamphetamine, the report was only "minimally relevant" because the defendant "was still able to testify regarding his subjective fear and belief that [the victim] was high on methamphetamine, which was his theory of the case." Id. at 66-67. Because of the State's interest in "avoiding the prejudicial and speculative effect" of the expert report on the fact-finding process, the Court held that excluding the report did not deprive the defendant of his constitutional right to present a defense. Id. at 66.

In contrast, in cases where the court held the exclusion of evidence deprived a defendant of a constitutional right to present a defense, the evidence excluded was necessary and critical to the defense, and it outweighed any opposing State interest. For example, in State v. Orn, the trial court restricted cross-examination of the victim for bias "to a single misleading question." 197 Wn.2d 343, 347, 482 P.3d 913 (2021). The investigating police department made

9

a deal with the victim, the State's key witness and the only testifying eyewitness, not to pursue other felony charges against the victim if he became a confidential informant for the police. Id. at 349-51. The Court reasoned "[t]he single, vague question permitted – '[I]sn't it true that since this incident, you have actually worked with Kent Police Department?' "—was "affirmatively misleading" because "a reasonable listener would not likely interpret 'worked with' to indicate 'worked as a confidential informant to avoid being charged himself.' " Id. at 355. While the defendant was still able to impeach the victim's credibility with prior inconsistent statements and other testimony, "the [trial court's] error … was specifically that the [excluded] evidence showed [the victim's] bias—not just that it damaged his credibility generally." Id. at 356. While the Court affirmed the defendant's conviction because the trial court's error was harmless beyond a reasonable doubt, the Court "agree[d] with [the defendant] that even under an abuse of discretion standard, [the defendant's] need to present this evidence [of bias] outweighed any purported [S]tate interest in excluding it." Id. at 358. The Court "reiterate[d that] highly relevant bias evidence . . . is admissible unless the State articulates a compelling interest for excluding it." Id. at 347-48.

Similarly, in State v. Jones, the excluded evidence was of "extremely high probative value and [could not] be barred without violating the Sixth Amendment." 168 Wn.2d 713, 724, 230 P.3d 576 (2010). There, the defendant wanted to testify that the rape victim "consented to sex during an all-night drug-induced sex party." Id. at 721. The trial court determined the rape shield statute barred his testimony. Id. at 717-18. On review, the Court noted precedent "made

10

a clear distinction between evidence of the general promiscuity of a rape victim and evidence that, if excluded, would deprive defendants of the ability to testify to their versions of the incident." Id. at 720-21. The Court held that the trial court violated the defendant's Sixth Amendment rights because his testimony that the victim had consented was "not marginally relevant evidence that a [trial] court should balance against the State's interest in excluding the evidence. Instead, it is evidence of extremely high probative value; it is [the defendant]'s entire defense." Id. at 721.

By contrast, here, the trial court excluded minimally relevant evidence that would have merely added to other similar evidence impeaching E.D.'s credibility. The State has—indeed, both parties have—an interest in ensuring "the integrity of the truthfinding process." See Jennings, 199 Wn.2d at 66 ("[T]he integrity of the truthfinding process and [a] defendant's right to a fair trial" are both important considerations.) Id. (citing Hudlow, 99 Wn.2d at 14). "The purpose of the Rules of Evidence is to afford any litigant a fair proceeding." State v. Bartholomew, 101 Wn.2d 631, 640, 683 P.2d 1079 (1984) (citing ER 102). "These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." ER 102. Specifically, while the rule at issue here, ER 613(b), allows impeachment of a witness with a prior out-of-court statement that is inconsistent with their testimony, even if that statement would otherwise be inadmissible hearsay, State v. Clinkenbeard, 130 Wn. App. 552, 569, 123 P.3d 872 (2005),

11

extrinsic evidence of a prior inconsistent statement is inadmissible in the absence of a proper foundation. ER 613(b); State v. Horton, 116 Wn. App. 909, 914, 68 P.3d 1145 (2003). Impeachment evidence affects the witness's credibility but is not probative of the substantive facts encompassed by the evidence. Clinkenbeard, 130 Wn. App. at 569 (citing State v. Johnson, 40 Wn. App. 371, 377, 699 P.2d 221 (1985)). Absent the proper foundation, Officer O'Hagan's impeachment testimony about what E.D. said constitutes inadmissible and unreliable hearsay. Without the proper foundation, it would be unclear that the purpose of that statement was limited to impeachment. The State has an interest in preventing the prejudice introduced by the admission of extrinsic evidence of an unsworn statement, particularly when it was entirely within K.F.D.'s power to lay a proper foundation and thereby avoid the prejudice.

"At its core, the constitutional right to present a defense ensures the defendant has an opportunity to defend against the State's accusations." Jennings, 199 Wn.2d at 66. Here, K.F.D. failed to lay an adequate foundation for the arm punch statement. Despite that self-inflicted procedural misstep, K.F.D. still was able to present his version of the events: that E.D.'s version of the events has "consistently changed," E.D. "trusted" K.F.D., and what happened that day on the dock was a "misunderstanding, miscommunication, and a misrepresentation." K.F.D. presented that defense through his own testimony and the testimony of other witnesses, including Officer O'Hagan. While Officer O'Hagan was not allowed to testify about E.D.'s arm punch statement, Officer O'Hagan was allowed to testify to numerous inconsistencies in E.D.'s testimony,

12

including for how long E.D. knew K.F.D., about how E.D. did not mention any choke hold to officers at the scene, and about how he observed no injury to E.D.

On balance, K.F.D.'s interest in one minimally probative statement that merely bolsters other impeachment of E.D.'s credibility is outweighed by the State's interest in the integrity of the truthfinding process. The trial court did not violate K.F.D.'s constitutional right to present a defense by excluding Officer O'Hagan's testimony about the arm punch statement.

We affirm.

_Cheng, J._

WE CONCUR:

_Bowman, J_    _Dwyer, J._