IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38410-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MATTHEW EVAN MARKHAM, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Following a bench trial, Matthew Markham appeals his conviction for the crime of failing to register as a sex offender (third or subsequent offense). On appeal, he challenges the sufficiency of the evidence that he had changed his residence and argues the trial court impermissibly relied on hearsay evidence to reach its findings. We disagree and affirm.

## FACTS

*Factual overview*

Mr. Markham is required to register as a sex offender because of a juvenile adjudication for a sex offense. In 2014 and again in 2015, he was convicted for failing to do so. In March 2020, he was released from prison and promptly registered with the

Stevens County Sheriff's Office, giving his residential address as his parents' home in Colville. Mr. Markham lived in a travel trailer on his parents' property. While the trailer was initially by their home, Mr. Markham later relocated it about 500 yards away in mid-September.

Mr. Markham reconnected with an old friend, Kristal Wendt, at a wedding and they began dating. Mr. Markham began regularly staying at Ms. Wendt's home in Northport, but did not update his address with the sheriff's office. Over the summer, Mr. Markham's community corrections officer (CCO) notified the sheriff's office that he was unable to contact or locate Mr. Markham. In December, the State charged Mr. Markham with failure to register as a sex offender and issued a warrant for his arrest.

*Trial*

Mr. Markham proceeded to a bench trial. The court heard testimony from a number of witnesses; we discuss only those necessary to resolve this appeal.

Ms. Wendt's mother, Anita Mawdsley, testified about Mr. Markham moving in with Ms. Wendt. She recalled them going on a camping trip in September 2020 and "when they came back, it just seemed like he just stayed." Report of Proceedings (RP) at 128. Ms. Mawdsley visited Ms. Wendt's house two or three times per week and when Mr. Markham was not working during the day, "he was always there." RP at 127. She

2

recalled, "[A]s far as I could see, anytime I was there, he, you know he was there. His stuff was there. All of his vehicles were there." RP at 128. It appeared to Ms. Mawdsley that Mr. Markham spent the night every night. She drove a school bus and would see Mr. Markham in a robe when he brought Ms. Wendt's son out to meet the school bus in the morning. He also sometimes dropped Ms. Wendt's son off at preschool in the mornings. When Mr. Markham went to jail in January 2021, Ms. Wendt had a "change of heart" about living together and packed all his belongings for him to take, including "a dresser and all of his clothes and stuff." RP at 136. Ms. Mawdsley testified, without objection, to various conversations she had with Ms. Wendt about Mr. Markham.

Ms. Wendt denied Mr. Markham had moved into her house, but acknowledged that they "spent a lot of time together for a few months" and he had a dresser and clothes at her house. RP at 144. He kept his work trucks at her home, as well as other vehicles, and kept "tools and stuff" in her garage. RP at 145. She testified that she did not believe that another person could live with her unless they first had an explicit conversation "[o]r an address change or . . . a tenant notice, like you know paperwork . . . is exchanged that he's you know getting mail or living in my home." RP at 154. She did not know how many nights per week he spent at her house but testified he spent three or four nights around Christmas. Ms. Wendt denied any memory of various conversations she had previously

3

with the prosecutor or law enforcement in which she had said Mr. Markham was living with her.

Several law enforcement witnesses testified that contrary to her testimony at trial, Ms. Wendt had previously told them Mr. Markham was living with her. Deputy Cameron Craddock of the Stevens County Sheriff's Office testified that when he responded to Ms. Wendt's house on another matter in January 2021, Ms. Wendt showed him Mr. Markham's dresser, clothes, and boots. Sergeant Michael Gilmore testified that the Department of Corrections (DOC) had contacted him because they were "having trouble locating [Mr. Markham] where he was supposed to be living at his parent's house." RP at 315. He had heard that Mr. Markham and Ms. Wendt were dating, so when Detective John Colton Schumacher went to contact Ms. Wendt on another matter, Sergeant Gilmore asked him to follow up about Mr. Markham as well. Detective Schumacher testified that when he spoke with Ms. Wendt at her home on October 15, 2020, she told him Mr. Markham had been living with her for the past month. Detective Schumacher had spoken with Ms. Mawdsley a couple days previously, who told him Mr. Markham had been living with Ms. Wendt for several months. Detective Schumacher also testified, without objection, about the contents of his conversations with Ms. Wendt and Ms. Mawdsley.

4

Mr. Markham's parents testified that he consistently lived in the trailer on their property, although they could not see his trailer from the house. Because he had so many trucks and kept odd hours, it was hard to know whether he was home or not. The only way they could communicate with Mr. Markham was to leave a note on his door. All of Mr. Markham's mail came to the house and his mother would let him know when there was something important. Mr. Markham also used his parents' telephone, including to keep in contact with the DOC. Mr. Markham would do laundry at his parents' house and raid the refrigerator and freezer, although he was there less after they moved the trailer farther from the house. After he started dating Ms. Wendt, he still kept his belongings at his parents' house.

Mr. Markham's mother could not say when Mr. Markham was home or not unless she heard him drive up the driveway. Mr. Markham did not like his mother nagging him, so he avoided her and she did not see him a lot. She worked and was gone three-quarters of the time and did not walk down to Mr. Markham's trailer because of a bad foot. She nonetheless testified that Mr. Markham spent five nights per week at their property. She could not remember previously telling the defense investigator that Mr. Markham was staying at Ms. Wendt's a few nights per week, but had short-term memory issues. Mr.

5

Markham's mother thought it was a "travesty" that he had to register as a sex offender and that he was constantly being put in jail because of it. RP at 242.

Mr. Markham's father recalled seeing tracks in the snow "all the time" by Mr. Markham's trailer, so he knew when Mr. Markham was coming back and forth. RP at 265. He saw tire tracks at least every other day, although if the ground was frozen, he could not always tell. When he heard someone coming up the driveway, he occasionally would check to make sure it was Mr. Markham. He recalled Mr. Markham doing laundry once or twice per week. He would also come to borrow coffee, fuel, and oil from his parents. As far as Mr. Markham's father knew, Mr. Markham still lived on their property while dating Ms. Wendt. Mr. Markham's father testified that he had spoken with Mr. Markham's CCO, Todd Mooney, a couple of times. He believed that Mr. Markham had been "railroaded" by the prosecutor and his defense attorney in the underlying sex offense case and had "been put through hell" for a crime he did not commit. RP at 283-84.

*Verdict and sentencing*

The court found Mr. Markham guilty beyond a reasonable doubt for failure to register as a sex offender after having two or more prior failure to register convictions. As relevant here, it found:

9.    On or about September 20, 2020, upon returning from a three-day trip to Seattle with his girlfriend, Kristal Wendt, the Defendant began staying nightly in her home [in] Northport, WA.  The Defendant moved most of his personal belongings to that address.  His personal property consisted of four vehicles (including a large work truck), clothing, work boots, a dresser, tools, and saws.  The Defendant slept and ate at that address, left for work from that address, and returned home from work to that address.  The Defendant routinely walked his girlfriend's son to school or the bus stop.  The Defendant was regularly seen at [Ms. Wendt's] address in the mornings by his girlfriend's mother, Ms. Mawdsley, who saw him several times wearing his robe when bringing the child to the bus stop.  Ms. Mawdsley had been inside her daughter's home during visits to exchange the children and was aware that the Defendant was residing there.

10.    During the time period at issue, the Defendant's travel trailer continually remained on his parents' property [in] Colville, WA.  The Defendant continually received mail at that address.  The Defendant continually stored some of his personal property in and around his trailer, including some vehicles.  The Defendant continually had his parents' permission to reside in the trailer on their property.  The Defendant appeared episodically at his parents' home to do his laundry, raid the refrigerator, or take coffee. . . .  The Defendant's parents had very little contact with him prior to his relationship with Ms. Wendt and even less during the pendency of that relationship.

11.    During the time period at issue, the Defendant was on DOC supervision.  In late June or early July, 2020, CCO Todd Moon[e]y notified the Stevens County Sheriff's Office that he was unable to contact or locate the Defendant. . . .  In October 2020, the Defendant's girlfriend and her mother, Ms. Mawdsley, each on separate occasions, informed Detective Schumacher that the Defendant was residing with Ms. Wendt . . . in Northport.  A warrant for the Defendant's arrest issued in December 2020.

Clerk's Papers (CP) at 266-67.  The court sentenced Mr. Markham to 50 months of

imprisonment and 36 months of community custody.

Mr. Markham appeals.

ANALYSIS

SUFFICIENCY OF THE EVIDENCE MR. MARKHAM RESIDED WITH MS. WENDT

Mr. Markham contends there was insufficient evidence that he resided with Ms. Wendt. We disagree.

In a challenge to the sufficiency of the evidence, we consider "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We draw all reasonable inferences in favor of the State and against the defendant. *Id.* "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.* Circumstantial and direct evidence are given the same weight. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "[F]ollowing a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). Unchallenged findings of fact are verities on appeal. *Id.* at 106.

RCW 9A.44.132(1) makes it a class B felony if a "person has a duty to register under RCW 9A.44.130 for a felony sex offense and knowingly fails to comply with any of the requirements of RCW 9A.44.130" and they have "been convicted of a

8

felony failure to register as a sex offender . . . on two or more prior occasions."

RCW 9A.44.130(5)(a) provides in part that if a person required to register "changes his or

her residence address within the same county, the person must provide, by certified mail,

with return receipt requested or in person, signed written notice of the change of address

to the county sheriff within three business days of moving." RCW 9A.44.128(5) defines

a "fixed residence" as "a building that a person lawfully and habitually uses as living

quarters a majority of the week."

Mr. Markham challenges finding of fact 9, arguing that Ms. Mawdsley's testimony

does not establish he habitually lived with Ms. Wendt a majority of the week. He argues

Ms. Mawdsley only saw him there two to three times per week, which is less than a

majority of the week. Mr. Markham's argument seems to be that we can draw no

reasonable inferences from the evidence whatsoever, let alone draw reasonable inferences

in the State's favor. This upends the standard of review and the rules regarding

circumstantial evidence.

Ms. Mawdsley testified she saw Mr. Markham at Ms. Wendt's home every time

she visited. While it is theoretically possible that the only times Mr. Markham was at Ms.

Wendt's home were the same times Ms. Mawdsley visited, that is not how we view the

facts on review for the sufficiency of the evidence. From Ms. Mawdsley's testimony, we

can reasonably infer that she always saw Mr. Markham at her daughter's home when she visited two to three times per week because he had moved there.

Mr. Markham also contends the State will undoubtedly claim that statements admitted for impeachment at trial support the finding Mr. Markham habitually resided with Ms. Wendt for a majority of the week. The State does not so claim and, as discussed above, Ms. Mawdsley's testimony based on her own personal knowledge is sufficient to support the trial court's finding that Mr. Markham was staying nightly at Ms. Wendt's home.

Mr. Markham also assigns error to the trial court's finding that his parents "had very little contact with him prior to his relationship with Ms. Wendt and even less during the pendency of that relationship." CP at 266. He devotes no argument to this claim of error, but there is clearly substantial evidence to support it. Mr. Markham's mother testified he actively avoided her, while his father's main point of contact appears to have been observing tire tracks in the snow. They both testified to seeing Mr. Markham less when they moved the trailer away from the house, which coincided with him starting to date Ms. Wendt. This supports the trial court's finding they had little contact with Mr. Markham.

Admitting the truth of this evidence and drawing all reasonable inferences from it, we conclude there was sufficient evidence that Mr. Markham habitually lived at Ms. Wendt's home the majority of the week and had changed his residence address.

INADMISSIBLE TESTIMONY

Mr. Markham next contends the trial court erred by relying on hearsay evidence to reach its verdict. We disagree.

We presume that trial judges, because they are knowledgeable about evidence rules, will separate admissible evidence from inadmissible evidence. *State v. Miles*, 77 Wn.2d 593, 601, 464 P.2d 723 (1970). The *Miles* presumption is rebuttable, however, and may be overcome on a showing that the trial court's verdict is not supported by sufficient evidence or by showing the trial judge relied on inadmissible evidence to make essential findings that it otherwise would not have made. *State v. Read*, 147 Wn.2d 238, 245-46, 53 P.3d 26 (2002).

Mr. Markham seeks to overcome the *Miles* presumption by focusing on the following portions of finding of fact 11:

> In late June or early July, 2020, CCO Todd Moon[e]y notified the Stevens County Sheriff's Office that he was unable to contact or locate the Defendant. . . . In October 2020, the Defendant's girlfriend and her mother, Ms. Mawdsley, each on separate occasions, informed Detective Schumacher that the Defendant was residing with Ms. Wendt at the Silver Crown address in Northport.

11

CP at 267.  Mr. Markham asserts these portions of the trial court's findings show that it relied on inadmissible hearsay to reach its verdict.  We disagree.

"Hearsay" is an out-of-court statement "offered in evidence to prove the truth of the matter asserted."  ER 801(c).  Here, the trial court did not enter a finding based on the truth of the matter asserted in the out-of-court statements of Mr. Mooney, Ms. Wendt, and Ms. Mawdsley.  It merely found that certain information had been relayed to law enforcement.  No other finding suggests that the trial court relied on, as substantive evidence, the information supplied to the law enforcement officers about the location of Mr. Markham's home.  In other words, the out-of-court statements were not utilized by the court to prove that Mr. Markham lived with Ms. Wendt.

Mr. Markham also challenges a number of statements made at trial as improper hearsay or opinion testimony.  He did not object at trial to the statements and presents no argument for why we should review the error for the first time on appeal or how the testimony affected the outcome of the trial.  We decline to address the claimed errors. ER 103(a)(1); RAP 2.5(a).

No. 38410-1-III
*State v. Markham*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

I CONCUR:

_____
Fearing, J.

13

No. 38410-1-III

SIDDOWAY, C.J. (dissenting in part) — I am in complete agreement with the majority that the evidence in this case is sufficient to sustain Matthew Markham's conviction. I also suspect that if the trial court struck its finding of fact 11, which Mr. Markham challenges as based in part on inadmissible hearsay, it would still have reached the same legal conclusions. Nevertheless, the wording of that finding raises a legitimate question whether the trial court relied on inadmissible hearsay that Mr. Markham's community corrections officer (CCO) had been unable to contact or locate Mr. Markham, and that Kristal Wendt and Anita Mawdsley told sheriff's detectives that Mr. Markham had been living with Ms. Wendt in Northport.

The State argues the evidence was admitted without objection, but this was a bench trial, and the evidence was not admitted without objection until the prosecutor had acknowledged that some of her evidence would be admissible for only a limited purpose. Early on, for example, the prosecutor pointed out that Detective John Colton Schumacher had taken statements from Ms. Wendt and Ms. Mawdsley, and depending on how they testified, he might be a rebuttal witness. She explained to the court that in her case in chief, "the only thing [Detective Schumacher] can testify to would be hearsay." Report of Proceedings (RP) at 41. The clear implication was that the prosecutor would raise the hearsay for an impeachment purpose.

Predictably, the prosecutor questioned both Ms. Wendt and Ms. Mawdsley about whether they told sheriff's personnel that Mr. Markham was living with Ms. Wendt, drawing denials from Ms. Wendt and testimony from Ms. Mawdsley that she could not

recall what she said.  The prosecutor identified ER 613 as the basis on which she was pursuing this line of questioning.  Under these circumstances, Mr. Markham was not required to object when the prosecutor presented extrinsic evidence of inconsistent statements the women made to the detective.  He was entitled to rely on the trial court to consider the evidence for only an impeachment purpose.

As the majority explains, we presume that a judge *does* rely on only admissible evidence, for its proper purpose.  But as the majority also acknowledges, the presumption can be overcome by showing that the trial judge relied on inadmissible evidence to make a finding that it otherwise would not have made.

Here, the trial judge could have relied on evidence that sheriff's personnel heard about the CCO's inability to contact Mr. Markham for the limited purpose of showing why they began an investigation.  To avoid an inference that it relied on the *substance* of the information, the finding could have said something along the lines of, "In late June or early July, the Stevens County Sheriff's Office was provided with information that caused it to commence an investigation into Mr. Markham's current residence."  By making a finding that the CCO notified the office that "he was unable to contact or locate the Defendant," a legitimate question is raised whether the trial court considered the CCO's inability to locate Mr. Markham as substantive evidence.  Clerk's Papers at 267.

The trial judge could have relied on extrinsic evidence of prior inconsistent statements of Ms. Wendt and Ms. Mawdsley as casting doubt on their credibility.  To

No. 38410-1-III
*State v. Markham*

avoid an inference that it relied on the *substance* of the statements, the trial court's

finding could have said something along the lines of, "While Ms. Wendt and her mother

testified at trial that Mr. Markham was not living with Ms. Wendt, the court discounts the

credibility of their testimony."  By making a finding that Ms. Wendt and Ms. Mawdsley

"informed Detective Schumacher that the Defendant was residing with Ms. Wendt . . . in

Northport," *id.*, a legitimate question is raised whether the trial court believed that the

women's statements to the detective were substantive evidence.[1]

   If I were writing for the panel, I would not reverse, but I would remand the case to

the trial court with directions to strike the second and fourth sentences of its finding of

fact 11 and consider whether any other changes to its findings and conclusions were

warranted in light of our opinion.  For this reason, I dissent in part.


_____
Siddoway, C.J.

---

[1] One or both counsel appeared to be unsure whether ER 613 impeachment is a hearsay exception (*see* RP at 249), which it is not.  *E.g.*, *State v. Clinkenbeard*, 130 Wn. App. 552, 569-70, 123 P.3d 872 (2005).